■ BEVERLY A. POTTALA, Respondent, v E. VICTOR POTTALA, Appellant.—Yesawich, Jr., J. Appeal from that part of a judgment of the Supreme Court ordering equitable distribution of the parties' marital property and maintenance to plaintiff, entered May 2, 1984 in Schenectady County, upon a decision of the court at Trial Term (Doran, J.), without a jury.

The parties were married on April 15, 1972. There were no children born of this union, the second marriage for each spouse. By late 1981, the marriage had completely curdled and plaintiff sued for divorce. A decree granting her a divorce based on defendant's cruel and inhuman treatment was rendered. Defendant is particularly critical of two aspects of the decree, namely, (1) the extent of plaintiff's interest in defendant's pension, such interest to vest on his retirement, and (2) a maintenance award to plaintiff of $110 per week, retroactive to the commencement of the action (and offset by payments of temporary maintenance defendant actually made), and terminable on plaintiff's remarriage or defendant's retirement. Beyond that, defendant maintains that reversal is required because plaintiff's net worth statement is grossly inaccurate and the trial was replete with irregularities.

The last-mentioned argument focuses on errors Trial Term allegedly committed in its treatment, not of the issue of the parties' property, but testimony and pleadings concerning the grounds for the divorce. Those claimed errors are not germane to this appeal, which is limited by the amended notice of appeal to "each and every part of [the judgment] except that part of said judgment which granted a dissolution of the marriage"; hence, they cannot justify a reversal.

As for defendant's criticism that plaintiff's statement of net worth is so grossly inaccurate as to make a reasonable assessment of her financial worth impossible, it is true that a "patently unbelievable" account of a party's own finances is not binding upon the court. However, this does not debar a court from arriving at that party's true financial state (*Bizzarro v Bizzarro,* 106 AD2d 690, 692; *Matter of Vetrano v Calvey,* 102 AD2d 932). Here, Trial Term did not find plaintiff's net worth statement patently unbelievable, but merely that she had miscalculated certain identifiable expenditures, particularly mortgage and tax payments, food, clothing, laun-

dry and dry cleaning expenses, and the needs of a daughter by a prior marriage, who it is undisputed defendant was not obligated to support. Since the data furnished, as adjusted by Trial Term, allowed for a proper analysis of plaintiff's finances, the court quite correctly refused to disregard it.

On the issue of maintenance, defendant contends that the award of $110 per week until he retires or plaintiff remarries is not only unnecessary, but excessive both in amount and in the period of time embraced. Given the standard of living the parties enjoyed prior to their divorce, the substantial disparity between defendant's annual income, as a sales engineer with General Electric Company, of $37,878.36 and plaintiff's annual income, as a clerk with the State of New York, of $9,824, and the necessity of plaintiff in the past to receive public assistance to enable her to heat her home, the record bears out Trial Term's express finding that defendant can afford to pay the amount directed and that plaintiff requires such financial assistance to meet her living expenses.

With respect to the term of the maintenance award, an indefinite time period appears appropriate in this instance for it is apparent that, despite her efforts to do so, plaintiff is unable to support herself sufficiently (see, Matter of Ward v Ward, 94 AD2d 908, 910). When the parties married, she was working part time taking care of a home for construction workers for which she earned $40 a week and, during the nine years of marriage to defendant, plaintiff remained at home. She has no special skills or training; nevertheless, at the time of trial she had already found employment with the State. Although, as Trial Term observed, that position offers little potential for significant monetary advancement, should that assumption later be shown to be erroneous, defendant can move for relief. Inasmuch as plaintiff is "economically useful" in her full-time employment and has not been shown to be leading a life of leisure at the expense of her husband (see, e.g., Brownstein v Brownstein, 25 AD2d 205, 209) or to be deliberately working at less than her capacity, awarding maintenance for an indefinite term was not inappropriate.

Nor do we find merit in defendant's claim that the share of defendant's pension allotted to plaintiff is excessive. Trial Term determined that upon defendant's retirement or election to take his pension, 30% of the fraction of 116 months (representing the length of the marriage), divided by the total months of defendant's service at date of retirement, is to be distributed to plaintiff. This percentage, as well as the formula applied, is not only reasonable, but consistent with prevailing

case law (*see, Majauskas v Majauskas,* 61 NY2d 481; *Wilson v Wilson,* 101 AD2d 536, 542, *appeal dismissed* 63 NY2d 768). Parenthetically, we note that there is no challenge to the method of payment.

The remainder of defendant's arguments are similarly unconvincing other than the contention that in computing the amount of maintenance arrears, consideration was not given to the fact that plaintiff admittedly cashed $993 in tax refund checks. In an exercise of our discretion, we credit 50% of that amount $466.50, to defendant's arrears and reduce the three installment payments of arrears accordingly.

Judgment modified, on the facts, without costs, by reversing so much thereof as awarded plaintiff $10,560 in maintenance arrears payable in three annual installments of $3,520; plaintiff is awarded $10,093.50 in maintenance arrears payable in three annual installments of $3,364.50; and, as so modified, affirmed. Main, J. P., Weiss, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.