Charlotte C. Sperling, Respondent, v Raymond G. Sperling, Appellant.

Second Department, March 25, 1991

**APPEARANCES OF COUNSEL**

*Ben Kinzler (Steve S. Efron* of counsel), for appellant.

*Ralph Rubel* for respondent.

**OPINION OF THE COURT**

MILLER, J.

The sole issue on this appeal is whether or not the court improvidently awarded the plaintiff wife lifetime maintenance in the sum of $100 per week. For the reasons that follow, we find the award improvident.

## I

This marriage lasted for approximately 20 years, during which the parties had two daughters. Both the husband and the wife worked and struggled to make ends meet. At the time of the trial the plaintiff wife Charlotte was 37 years old, the defendant husband Raymond was 39, and their daughters were 19 and 16 years old, respectively. Raymond, a truck maintenance supervisor, earned a gross annual salary of $30,000. Charlotte, a teacher's aide at a Lutheran school, grossed $9,500 per year. The oldest daughter attended college and received some financial aid while working part time, and received a subsidy from her mother. The younger daughter attended high school while working part time to help pay for ballet lessons. The parties stipulated that the sole asset, the marital residence, would be sold no later than four years after the younger daughter graduated from high school, and the proceeds would be divided equally between them. They also agreed that Charlotte, as the children's custodial parent, would have exclusive possession of the marital residence until it is sold and would pay its maintenance (including mortgage and taxes) until that time.

Charlotte and the children enjoy good health. Raymond testified to being in "fairly decent health" and explained that although he works full time, he suffered two crushed discs in his back and a fractured heel and has been found to be partially permanently disabled. He receives disability benefits.

At the trial, the sole issues were child support and maintenance. The resulting judgment requires Raymond to pay $40 per week per child in child support until each child reached the age of 21 years or is sooner emancipated, and $100 per

week maintenance for Charlotte until the death of either party or Charlotte's remarriage.

## II

In challenging the maintenance provision of the judgment, Raymond contends that Charlotte is an inappropriate candidate for lifetime maintenance since she is relatively young, healthy, a high school graduate with one year of college and additional training, and various work experience. Charlotte, on the other hand, contends that she devoted her married life (20 years) to contributing to the good of the family as parent, homemaker, and part-time wage earner. She subordinated her personal ambitions and interests to family priorities and should not now, when approaching middle age, be penalized for the sacrifice that redounded to her husband's benefit.

## III

Notwithstanding our concern and awareness of the dire plight of many women who, after long-term marriages, are unrealistically expected to enter the competitive job market from which they have been separated, we find that Charlotte does not fit into that unfortunate category. The trial court's conclusion that "[i]t is doubtful that she will ever become fully self-supporting" is simply not substantiated by the record or even consistent with other of the court's findings. Notably the court also found that "[w]ith time, plaintiff's clerical skills should expand to include secretarial skills, thereby increasing her earning capacity, although [she] may need to incur some relatively modest, short term training expenses to achieve this goal". Entirely lacking is any basis for the court's ultimate pessimistic prediction that even with training she will never be able to sustain her needs.

That unsupported conclusion is further belied by her past history.

At age 37, Charlotte has demonstrated significant capability and industry. She not only raised two children (who appear to be ambitious and responsible) and maintained a home, but has also worked as a part-time school bus driver (starting when the youngest child was five), a sales person, a bank clerk, and teacher's aide. Since the family was chronically in debt notwithstanding its simple life-style, she was unable to complete her training in her chosen field of interpreting for the deaf. Nor was she able to hone her skills as a secretary or computer

operator. Consequently, we view the limited nature of her earnings more as an indication of her limited opportunities than of any inherent limitations of her capabilities.

Based upon her age, mental and physical health, and past history, we find that Charlotte, given time and opportunity, will be capable of self-support consistent with the parties' marital standard of living, and that, therefore, requiring Raymond to pay nondurational maintenance was improvident. On the other hand, we find the amount awarded insufficient to provide realistically for her rehabilitation.

## IV

### THE LAW PERTAINING TO LIFETIME VERSUS DURATIONAL MAINTENANCE

The amount and duration of maintenance is a matter committed to the sound discretion of the trial court (see, Petrie v Petrie, 124 AD2d 449). However, legislative intent and judicial precedent must be considered.

Prior to July 19, 1980, the advent of the Equitable Distribution Law, spousal support after divorce, termed "alimony", continued until terminated by the death of either party, remarriage of the supported spouse, or court modification. The Equitable Distribution Law provided, for the first time in this State, for a distribution of property regardless of title, predicated upon the concept that marriage is an economic partnership, requiring equitable distribution of property obtained during the course of the marriage. Seeking consistency with the economic partnership theory underlying equitable distribution, spousal support after termination of a marriage, now termed "maintenance", was conceived and interpreted as being rehabilitative in nature, based upon the assumption that the supported party would, over a period of time, become capable of self-support, after obtaining the necessary education or training.

In 1986 the Legislature amended Domestic Relations Law § 236 (B) (6) to expressly provide for lifetime as well as durational maintenance (see, L 1986, ch 884), recognizing that not every spouse would be capable of self-support, even after a period of education and training. The Legislature concluded that the equitable distribution law had been "incorrectly interpreted" by the courts, so as to "deny indefinite maintenance to divorced women who come away from long-term marriages or from short-term marriages where there are

young children to be cared for." Such interpretations were found to contribute to the "feminization of poverty" and to be contrary to legislative intent (Scheinkman, Practice Commentarys, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:10, at 224).

Clearly every case must be determined on its unique facts, and the resultant judicial authorities can provide no "bright-line test" clearly differentiating those cases where a spouse is found to be capable of future self-support, and therefore entitled only to durational maintenance, from those where the dependant spouse is found incapable of future self-support and entitled to lifetime maintenance. However, the profile of the plaintiff in this case is clearly more identifiable with the former than the latter.

Where lifetime maintenance has been awarded, the recipient spouse has almost invariably been older than Charlotte, often in impaired health. Furthermore, the supporting spouse was in far better financial condition than Raymond. Thus, lifetime maintenance was directed in *Reingold v Reingold* (143 AD2d 126 [wife, 52, never worked, husband earned over $100,000 per year]), *Iacobucci v Iacobucci* (140 AD2d 412 [husband owned a successful insurance business, wife had never worked]), *Formato v Formato* (134 AD2d 564 [wife, 46, had no business skills, husband earned $72,000 per year]), *Jones v Jones* (133 AD2d 217 [wife 50, had psychiatric problems; husband earned $58,000 a year]), *Shahidi v Shahidi* (129 AD2d 627 [husband's expectations were promising, wife had limited potential earning capacity]), *Kerlinger v Kerlinger* (121 AD2d 691 [wife, 50, no special skills, no high school diploma]), *Delaney v Delaney* (114 AD2d 312; *see also, Delaney v Delancy,* 111 AD2d 111 [wife, 47, husband, president of Consolidated Edison, earned $100,000 a year]), *Murphy v Murphy* (110 AD2d 688 [wife, 47, no special skills or training]), and *Antis v Antis* (108 AD2d 889 [wife mentally ill and severely disfigured, husband earned $49,700]; *but cf., Pottala v Pottala,* 112 AD2d 553).

Where the spouse seeking support is relatively young and healthy, however, and is not required to care for young children, durational maintenance has more commonly been awarded *(see, Eli v Eli,* 123 AD2d 819; *Coffey v Coffey,* 119 AD2d 620; *Armando v Armando,* 114 AD2d 875; *Hillmann v Hillmann,* 109 AD2d 777; *see also, Behan v Behan,* 163 AD2d 505).

# V

## REHABILITATIVE MAINTENANCE

Having determined that Charlotte can be rehabilitated, we must next consider the appropriate time period and amount of financial support. Unfortunately, we cannot realistically hope to "rehabilitate" Charlotte in the dictionary definition of the term, i.e., to "restore to a former capacity" (Webster's Third International Dictionary, at 1914 [1965]), since the lost opportunities of youth are not likely to be recaptured. The more realistic function of durational maintenance is to allow the recipient spouse "an opportunity to achieve [economic] independence" *(O'Brien v O'Brien,* 66 NY2d 576, 585, quoting from Assembly mem, 1980 NY Legis Ann, at 130). The maintenance award should therefore be in an amount and for a time period sufficient to give her "a reasonable period of time in which to learn or update [her] work skills and to enter the employment market with a view to becoming self-supporting" *(Neumark v Neumark,* 120 AD2d 502, 504; *see also, Eli v Eli, supra; Gundlah v Gundlah,* 116 AD2d 1026).

Statutory guidelines to determine the amount and duration of maintenance are set forth in Domestic Relations Law § 236 (B) (6), wherein the Legislature directed the courts to weigh and consider 11 factors. Analysis of those factors reveal two distinct legislative concerns relating first to the earning capacity of the parties and, second, to the equitable or meritorious nature of the application for maintenance. Impacting upon the parties' earning ability are their age, health, and the presence of children in the home. The tax consequences of maintenance must also be considered. The equitable factors to be considered include the duration of the marriage, the sacrifice made by the person seeking support in foregoing or delaying education, training, or career opportunities, and each party's contribution to the career or career potential of the other. Also to be considered are wasteful dissipation of marital assets or their transfer without fair consideration in contemplation of the marital action. Moreover, equity requires that the parties' marital standard of living must be considered in gauging the ability of the recipient spouse to become self-supporting, and the amount of maintenance to be awarded. For example, while a recipient spouse with earning capacity of $20,000 per year may be considered self-supporting in a given case, that same income may be deemed insufficient in the case

of a spouse who had enjoyed a higher marital standard of living.

## VI

Keeping these guidelines in mind, we find that Charlotte requires substantially more financial assistance in the years immediately following the divorce than the $100 per week the court awarded. In order to compete with other applicants in secretarial or computer type employment, she requires substantial training, since she lacks basic secretarial skills, much less knowledge of word processing or computers. While obtaining this necessary training, she must continue working in order to defray her immediate expenses (including mortgage and taxes on the marital residence). Thus, it is reasonable to assume that her period of training may be considerable, that she may not find employment easily, while at the same time having no "nest egg" upon which to fall back. Therefore, we find that an award of $200 per week for the first four years, decreasing to $100 per week for an additional four years will more realistically enable her to rehabilitate herself than the $100 per week permanent maintenance awarded by the Supreme Court. We recognize that with Raymond's gross income of only $30,000 per year, the payment of such maintenance may well require financial sacrifice on his part. However, that sacrifice is justified by the 20 years Charlotte devoted to being primary parent and homemaker, while struggling to meet family obligations, working at one low-paying job after another, without planning for the economic independence she now lacks and did not anticipate she would require.

That two cannot live as cheaply as one in the context of divorce is exemplified by this family of modest means. The limited financial resources that caused financial strife during marriage commonly result, postdivorce, in circumstances more closely resembling actual economic suffering for both parties. In cases such as this, we can only seek to balance the level of their opportunity and deprivation.

Therefore, the judgment is reversed insofar as appealed from, on the facts and as a matter of discretion, without costs or disbursements, the maintenance provision of the fourth decretal paragraph of the judgment is deleted, and a provision is substituted therefor directing the defendant to pay the plaintiff by check or money order drawn to her order and forwarded on Monday of each week commencing November

23, 1987, the sum of $200 per week as maintenance for four years, and the sum of $100 per week as maintenance for an additional four years, with all maintenance terminating in the event that either party dies or the plaintiff remarries.

MANGANO, P. J., KUNZEMAN and EIBER, JJ., concur.

Ordered that Presiding Justice Mangano has been substituted for former Justice Rubin (22 NYCRR 670.1 [c]); and it is further,

Ordered that the judgment is reversed insofar as appealed from, on the facts and as a matter of discretion, without costs or disbursements, the maintenance provision of the fourth decretal paragraph of the judgment is deleted, and a provision is substituted therefor directing the defendant to pay the plaintiff by check or money order drawn to her order and forwarded on Monday of each week commencing November 23, 1987, the sum of $200 per week as maintenance for four years, and the sum of $100 per week as maintenance for an additional four years, with all maintenance terminating in the event that either party dies or the plaintiff remarries; and it is further,

Ordered that the matter is remitted to the Supreme Court, Nassau County, for a determination of the amount of arrears in maintenance due and owing, and for a determination as to how those arrears shall be paid.