■ LEONARD WILNER, Appellant, v CHARLOTTE WILNER, Respondent. [595 NYS2d 978] —In an action for a divorce and ancillary relief, the plaintiff husband appeals, as limited by his brief, from stated portions of a judgment of the Supreme Court, Queens County (Zelman, J.), entered April 13, 1989, which, *inter alia,* (1) directed that the former marital residence be sold, and that the defendant wife receive 75% of the sale proceeds, (2) directed that the husband's whole life insurance policy be liquidated, and that the wife receive 75% of the proceeds, and (3) directed the husband to pay the wife maintenance in the sum of $200 per week. By decision and order of this Court dated July 8, 1991, the matter was remitted to the Supreme Court, Queens County, to report on the factors considered in the equitable distribution and maintenance determination in compliance with the provisions of Domestic Relations Law § 236 (B) (5) (g) and (5) (b), and the appeal was

held in abeyance in the interim *(see, Wilner v Wilner,* 175 AD2d 158). The Supreme Court has now filed its findings with this Court.

Ordered that the judgment is modified, as a matter of discretion, by adding to the seventh decretal paragraph thereof, after the words "shall be sold", the words "with all convenient speed"; as so modified, the judgment is affirmed insofar as appealed from, with costs to the respondent.

On appeal, the plaintiff husband contends that the Supreme Court erred in awarding the defendant wife a 75% share of the proceeds which will be realized by the sale of the marital residence, and by liquidation of the husband's life insurance policy. We disagree. It is by now well established that the wasteful dissipation of assets by either spouse is one of the factors which may be considered in determining equitable distribution of marital property *(see,* Domestic Relations Law § 236 [B] [5] [d]). Contrary to the husband's contentions, the record supports the Supreme Court's finding that he dissipated substantial sums of money by gambling. Although the precise amount of money dissipated through the husband's gambling activities cannot be determined, the evidence presented at trial reveals, *inter alia,* that the husband was a "heavy roller", who enrolled in Gamblers' Anonymous in 1985. The husband made frequent trips to Atlantic City gambling casinos, and regularly wagered on sporting events. There was also testimony that the husband removed an estimated $10,000 to $20,000 per month in unrecorded cash receipts from his company safe, and that he used at least some of these funds to satisfy his gambling debts. Despite the fact that the husband's gold refining business was successful in the early 1980's, generating receipts of $600,000 alone during a three-month period in 1986, the parties were left with virtually no assets at the end of their 32-year marriage. Under these circumstances, we cannot find that the Supreme Court erred in awarding a greater share of the remaining marital assets to the wife *(see, Baker v Baker,* 188 AD2d 710; *Goldberg v Goldberg,* 172 AD2d 316; *Lenczycki v Lenczycki,* 152 AD2d 621; *Mahon v Mahon,* 129 AD2d 684).

We further reject the husband's contention that the Supreme Court improperly awarded the wife permanent maintenance. The amount and duration of maintenance is a matter committed to the sound discretion of the trial court *(see, Loeb v Loeb,* 186 AD2d 174; *Petrie v Petrie,* 124 AD2d 449), and Domestic Relations Law § 236 (B) (6) "expressly provides for

lifetime as well as durational maintenance in recognition of the fact that not every spouse would be capable of self-support, even after a period of education and training" *(Loeb v Loeb, supra,* at 175, relying upon *Sperling v Sperling,* 165 AD2d 338). In the present case, taking into account the long duration of the parties' marriage, and the fact that the wife is over 60 years old and lacks marketable skills, the award of permanent maintenance was not an improvident exercise of discretion *(see, Sperling v Sperling, supra; Di Bella v Di Bella,* 140 AD2d 292). Moreover, the award of $200 per week was not excessive in light of the respective financial positions of the parties *(see, Shoenfeld v Shoenfeld,* 168 AD2d 674).

Further, we find that the Supreme Court's award of counsel fees to the wife was a proper exercise of its discretion pursuant to Domestic Relations Law § 237.

We have examined the husband's remaining contentions, and find that they are without merit. Thompson, J. P., Lawrence and Eiber, JJ., concur.

Balletta, J., concurs in part and dissents in part, and votes to further modify the judgment by reducing the defendant wife's distributive award to 50% of the marital assets, with the following memorandum: I respectfully disagree with the majority's finding that the trial court properly awarded the wife a disproportionate share of the marital assets. Specifically, although the statute authorizes the court to consider the wasteful dissipation of assets by a spouse when fashioning an award of equitable distribution *(see,* Domestic Relations Law § 236 [B] [5] [d] [11]; *also see, Blickstein v Blickstein,* 99 AD2d 287), I do not believe that sufficient evidence was adduced to support the trial court's finding.

In the instant case, the trial court concluded that the husband's gambling losses, which the court found amounted to $500,000, and the husband's investments in "risky" ventures such as the commodities and futures markets and a Broadway play "constituted a wasteful dissipation of the marital assets" and is representative of his poor judgment to the detriment of his family.

The record does not support the trial court's finding with respect to gambling losses, nor would it be proper to conclude that investment in the commodities and futures markets and a failed Broadway play is a wasteful dissipation of assets.

While the record indicates that the defendant husband gambled, it is not clear how the court concluded that gambling losses amounted to $500,000 or any other lesser figure.

The mere fact of gambling, without the establishment of the dollar amount of those losses, would be nothing more than mere speculation that he did, in fact, lose substantial sums of money at Atlantic City casinos. The record merely consists of unsubstantiated allegations without any proof of the dollar amount of losses which, in my view, cannot be the basis of a finding of wasteful dissipation of assets based on gambling losses.

Although the husband admitted that he often gambled, when asked whether he generally won or lost at gambling, the husband stated, "Merely holding my own. There were times I lost a few dollars". The wife failed to present any evidence, either directly or indirectly, as to the amount of losses, if any, the husband sustained over the course of the years. Although the wife went on gambling trips with her husband, that fact alone cannot support a finding of gambling losses where no proof of dollar amounts has been adequately established in the record. Nor does attendance at Gamblers' Anonymous give rise to a presumption of gambling loss where no proof is presented. Thus, the record is devoid of any testimony in support of the trial court's finding that the husband had lost some $500,000 while gambling or any lesser amount which could be calculated with reasonable certainty.

As to the husband's investments in the commodities market and in the Broadway play, the evidence is also insufficient to support a finding of wasteful dissipation. Although the husband did sustain losses on these investments, there was no evidence that these losses were the result of poor business judgment or that they were so unusually risky that no reasonably prudent investor would have made the same investments. Investment in the commodities and futures markets is a widely recognized and legitimate form of investment, even though the conservative investor might not include such investments in his portfolio. The commodities market is a tremendous undertaking in the total financial market, and it would be a grave disservice to suggest that such investment, in and of itself, is a wasteful dissipation of marital assets.

High risk investments are commonplace and do not necessarily equate with wasteful dissipation of marital assets. The wealthiest among us have often invested in ventures which would not be acceptable to the more conservative investor. New issues in the stock market always involve high risk. Most such ventures fail, but, for example, those who invested in Home Depot as a new venture several years ago are now reaping the benefits of an investment in one of the more

aggressive and successful new companies listed on the New York Stock Exchange.

Investment in Broadway plays may not be as widely acceptable as other market investments; nevertheless it is clear that many prudent individuals who are patrons of the arts invest in the legitimate theater. Without such investments, we would have an art form destined to extinction. In this case, the husband was impressed with the music and the play and the individual who was to play a leading role in the show. Unfortunately, the production did not last very long on Broadway, but those people who originally invested in A Chorus Line, which was nothing more than an off-Broadway show, can hardly claim that their investment was imprudent or wasteful.

In the absence of some expert testimony that the investments were foolhardy or imprudent or unreasonable or otherwise so financially unsound at the time they were made so as to evidence a reckless disregard of family assets, I do not believe that this Court should use 20-20 hindsight to now find that there was a wasteful dissipation of assets. Certainly, without some testimony of a financial nature, this Court is ill-prepared to perform the kind of investment analysis that would be required to determine that a particular investment was a "bad risk". The mere fact that an investment is viewed by some as being "risky" does not lead inescapably to the conclusion that assets were dissipated.

Moreover, it could be just as readily inferred from the trial evidence that the parties enjoyed a rather comfortable lifestyle as a result of the husband's investment activities. Should the husband now be penalized merely because certain investments turned bad, even though both parties had benefited during the marriage from those investments when they were good? Further, if the husband's investments had resulted in a large profit, would the trial court have just as readily awarded the entire sum to him? In conclusion, without some evidence from which it could be inferred that the husband undertook these investments in order to deprive the wife of equitable distribution, I do not agree that under the circumstances of this case, the husband should be penalized because he invested in the commodities market or a Broadway play.