ELIZABETH A. KITTREDGE *vs.* SIDNEY KITTREDGE.

Hampden. September 4, 2003. - February 13, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Divorce and Separation,* Division of property.

In composing an order dividing a marital estate pursuant to G. L. c. 208, § 34, a Probate and Family Court judge properly found that the husband lost a net amount of $400,000 gambling, where the judge had the discretion to place somewhat greater credence in the husband's expert's opinion, based on the judge's assessment of the witnesses' credibility, and to use a degree of approximation similar to that which both sides' experts used in their own calculations [33]; moreover, there was no error in the judge's treatment of three specific items the wife claimed should have been added to the calculation of the losses, where the husband's expert, who had done accounting work for the family business for many years, testified that one relevant transaction had already been accounted for elsewhere in the analysis, and where the wife's arguments concerning the estimation of the husband's weekly personal expenses that were paid in cash and the propriety of the judge's finding that two checks for large dollar amounts were for vacation expenses rather than payments to bookies were without merit [33-34].

A Probate and Family Court judge did not err in determining that only ten per cent of a husband's total gambling losses constituted dissipation of marital assests for purposes of dividing the marital estate pursuant to G. L. c. 208, § 34, where the wife did not specifically argue below that the illegality of her husband's gambling expenditures rendered them in their entirety a dissipation of marital assets as a matter of law [34-35], and where illegality did not automatically equate with dissipation of marital assets in any event, as dissipation depended on the circumstances and timing of the gambling activity in question, and the record demonstrated that the husband's gambling losses did not undermine the family's financial security, and the wife did nothing to protest the husband's gambling [36-42]; likewise, the judge's decision to treat ten per cent of the gambling losses as dissipation and treat the remaining ninety per cent as ordinary expenditures, while unexplained, was not arbitrary, where the husband continued to incur gambling losses when it was clear that the divorce would proceed and that the marital estate would need to be divided, and the judge calculated that final year of gambling as ten per cent of the losses incurred over the relevant ten-year period [42-43].

This court saw no abuse of discretion in a marital property division that, after consideration of all the factors set forth in G. L. c. 208, § 34, awarded the plaintiff wife approximately sixty-four per cent of the marital estate, an

amount that enabled her to continue the same comfortable lifestyle she enjoyed throughout the years of her marriage, notwithstanding the husband's extensive gambling, which did not adversely affect the family. [43-45]

COMPLAINT for divorce filed in the Hampden Division of the Probate and Family Court Department on February 11, 1991.

Following review in the Appeals Court, 45 Mass. App. Ct. 1109 (1998), further proceedings with respect to the division of assets were had before *David G. Sacks*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Wendy H. Sibbison* for Elizabeth A. Kittredge.

*Thomas A. Kenefick, III* (*Mary H. Patryn* with him) for Sidney Kittredge.

SOSMAN, J. In this appeal challenging the order of the Probate and Family Court dividing the parties' marital estate pursuant to G. L. c. 208, § 34, the wife contends that the judge erred when he failed to treat the entirety of her husband's gambling losses as a dissipation of marital assets. She also claims that the judge's findings with respect to the amount of those losses are erroneous. We granted the wife's application for direct appellate review, and we now affirm the judgment.

1. *Background.* The plaintiff, Elizabeth A. Kittredge (wife), and the defendant, Sidney Kittredge (husband), were married in 1967. The husband worked in a family business, Kittredge Equipment Company, of which he was a part owner. The wife was the primary homemaker over the course of the marriage, staying at home to raise their three children. The wife acknowledges that, throughout the marriage, the husband was "an excellent economic provider," enabling the family to live "an upper class lifestyle," including "a fine home, clothing, vacations, travel, and recreational activities." Over the many years that the husband was the sole financial provider for the family, the wife and children did not "want[] for anything."

The husband was, however, a heavy gambler, regularly placing large bets through bookies, plus occasionally gambling at casinos. Most of his bets were placed on professional and col-

lege sporting events, and his sole form of entertainment was to gamble and watch television games on which he had placed bets. This gambling activity — which the wife characterized as "compulsive" — occurred throughout the course of their twenty-seven year marriage.

The wife's father died in 1987, and in 1990 she received an inheritance valued at approximately $1.3 million. With the income from that inheritance, the wife began to pay some of the daily household expenses, while the husband paid the taxes on that additional income and paid for the children's education. As of the time of the master's hearing, the wife estimated that the husband had spent over $350,000 on the children's educational expenses,[1] and it was anticipated that the husband would be paying $50,000 for the upcoming weddings of two of their daughters.

The wife filed for divorce in February, 1991, alleging an irretrievable breakdown of the marriage. The wife claimed that that breakdown occurred gradually as "a subtle and slow process" during the 1980's, but that she had continued with the marriage until the children were grown. An attempt at marriage counselling, undertaken over a period of months after the wife filed for divorce, was unsuccessful, and the husband moved out of the marital home in January, 1992.

The case was tried before a master, and the judge adopted the master's findings but modified the master's recommended division of the marital property. The marital estate, including the wife's inheritance from her father,[2] was valued at $4,442,284, of which $2,442,065 was held by the husband and $2,000,219 was held by the wife. The judge ordered that the husband transfer to the wife his one-half interest in the marital home,[3] $100,000 in liquid assets, a $100,000 share in his pension plan, and his real estate investments through an entity referred to as

---

[1]At the time of the hearing, one of the daughters was in her third year of medical school, and the youngest child was in her sophomore year in college. The eldest daughter had completed law school and was a practicing attorney.

[2]By the time of hearing, the value of the wife's inheritance had appreciated to $1.8 million.

[3]The home in Longmeadow was valued at $330,000, making the husband's one-half interest worth $165,000.

Grove Limited Partnership (then valued at $397,400). In percentage terms, this equated to awarding sixty-two per cent of the marital estate to the wife and thirty-eight per cent of the estate to the husband. In ordering this division, the judge relied on the master's finding that the husband's gambling losses over the course of the marriage were on the order of $30,000 to $35,000, and those losses were not a factor in the judge's assessment of the appropriate division of the marital property.

Both parties appealed. In an order and unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court reversed and remanded that portion of the judgment pertaining to the division of assets, ordering further proceedings with respect to two specific issues: a determination of the amount of the husband's gambling losses (as to which there had been insufficient evidence to support the judge's finding), and a valuation (including consideration of tax consequences) of the husband's interest in Grove Limited Partnership.[4] *Kittredge* v. *Kittredge*, 45 Mass. App. Ct. 1109 (1998). The Appeals Court also criticized the judge for adopting, without modification, findings by the master that were replete with disapproving remarks about the wife's lifestyle. The Appeals Court set aside the award of marital assets on the ground that, in failing to scrutinize the master's findings, the judge had not properly considered the factors under G. L. c. 208, § 34.

2. *Proceedings on remand.* On remand, the judge conducted a further evidentiary hearing with respect to the amount of the husband's gambling losses and the appropriate treatment of those losses in the division of the marital estate.[5] The parties presented evidence and proposed calculations of net gambling

---

[4]The Appeals Court affirmed various aspects of the challenged judgment, including the treatment of the wife's inheritance as an asset of the marital estate and the denial of alimony to either side. However, the Appeals Court left open the possibility that adjustment of the property division might make it appropriate to reconsider the issue of alimony. The wife, having remarried, makes no further claim for alimony.

[5]The parties stipulated to the value of the husband's interest in Grove Limited Partnership, and no further issue is raised with respect to that particular asset or its treatment in the amended judgment dividing the estate.

losses incurred from 1983 to 1992.[6] Expert accountants for both sides agreed, at least in concept, as to how the net gambling losses (which had never been documented or recorded in any fashion) could be reconstructed from existing records of that ten-year period. The husband had deposited his gambling winnings in and paid his gambling debts from identified accounts, but had also deposited other nongambling earnings in those same accounts and had used funds from those accounts to pay other expenses. By identifying and quantifying deposits and expenditures that were not related to gambling, the parties' experts proceeded on the assumption that everything else was attributable to gambling — any deposit that could not be attributed to some other source was treated as gambling winnings, and every expenditure from the account that could not be identified for some other purpose was treated as a gambling loss. Thus, the dispute centered on whether particular items had or had not been properly traced to some nongambling activity. Based on differing treatment of those items, the experts reached vastly disparate calculations of the husband's net gambling losses over that ten-year period, with the wife's expert opining that the losses amounted to $707,543, while the husband's expert arrived at a figure of $296,690.

The judge ultimately found that the net gambling losses over that time period were $400,000, but he concluded, without making any subsidiary findings in support of the figure, that only $40,000 of that amount should be characterized as "waste" of marital assets. He ordered the husband to make an additional $40,000 transfer to the wife in order to account for that "waste," plus other adjustments to the original division to account for such things as the new valuation of Grove Limited Partnership. As a result of these adjustments, the over-all division of marital property awarded sixty-four per cent of the estate to the wife and thirty-six per cent to the husband. The wife now appeals, challenging the judge's finding as to the amount of the gambling losses and his decision to treat only ten per cent of those losses as a dissipation of marital assets.

[6]There was no way to quantify the gambling winnings and losses for the earlier years, and the wife made no claim with respect to any gambling losses incurred during those earlier years.

3. *Amount of gambling losses.* The wife complains that the judge's finding of $400,000 in net gambling losses was arbitrary, as it was not supported by either side's expert and did not constitute the mathematical average of the two expert opinions. See *Ross* v. *Ross*, 50 Mass. App. Ct. 77, 82 (2000) (judge has discretion "to average conflicting experts' assessments"). We reject the wife's argument. The judge did not entirely credit either expert, finding various defects in both of their computations and analyses, and concluding that a "precise determination" of the net gambling losses was not possible on the evidence presented. That assessment of the expert testimony did not require the judge to find that the gambling losses were at the precise midpoint between the two discredited opinions. Although the judge did not articulate his reasons for selecting the figure of $400,000 (a figure $100,000 less than the average of the two opinions), he did articulate general grounds for placing somewhat greater, although not total, credence in the husband's expert, thus making it rational to select a figure closer to the husband's expert's opinion.[7] Where both sides used a certain amount of approximation and estimation in their own calculations, we see no error in the judge's finding that effectively used a similar degree of approximation and that was based on his assessment of the witnesses' credibility.

The wife also raises arguments concerning three specific items that allegedly should have been added to the calculation of losses. The wife complains that the judge should have included an alleged loan repayment from Kittredge Equipment Company to the husband as a nongambling deposit (thus reducing the total computation of gambling winnings). However, the husband's expert, who had done accounting work for the company for many years, testified that the transaction in question was not a loan but a contribution to capital that had already been accounted for elsewhere in the analysis. Notwithstanding alleged gaps in the documentation of that transaction, the

[7]To the extent that there needed to be a mathematical rationale for the $400,000 approximate figure, that rationale can be found in the judge's resolution of two disputed items in favor of the wife which, when added to the husband's expert's opinion of $296,000 in losses (which had failed to include those two disputed items), would result in losses of $427,350.

judge's decision to credit the accountant's testimony is one we do not disturb.

We similarly reject the wife's argument with respect to the estimation of the husband's weekly personal expenses that were paid in cash. The husband's practice was to pay his bookies by withdrawing cash (using checks payable to himself) from the accounts at issue. The parties disputed what amount of the withdrawn cash was used by the husband for his own personal expenses, which would reduce the calculation of the amount that was ultimately paid to his bookies. The wife claims that the correct figure for the husband's weekly cash expenditures would be only $100, whereas the judge adopted a figure of $300 a week. The husband testified that he did not have a personal credit card, and that his personal cash expenses were on the order of $300 to $400 a week. The judge's finding of $300 a week for this item thus has support in the record.

Finally, the wife challenges the judge's finding that two of the checks for large amounts of cash were for expenses in connection with two vacation trips (and thus not for payments to bookies). The argument that she makes (contending that there was no evidence that the husband had a "habit" of taking large amounts of cash with him on vacation) does not undermine the logic of the judge's finding. Based on common experience, it is reasonable to infer that a substantial withdrawal of cash immediately prior to a vacation trip is for the purpose of covering additional expenditures in connection with that trip.

4. *Treatment of gambling losses as dissipation of marital assets.* The wife contends that the entirety of the husband's gambling losses must, as a matter of law, be treated as dissipation of marital assets, and that the judge therefore erred when he determined that only $40,000 (or ten per cent of the total gambling losses) constituted dissipation. In large measure, her argument rests on the theory that any "illegal" expenditure is, by definition, a form of financial misconduct that qualifies as dissipation, and that her husband's involvement with an unlawful form of gambling (see G. L. c. 271, §§ 1, 5, 17, 17A, 23) requires the court to treat all his gambling losses as dissipation.

a. *Waiver.* The husband contends that this argument concerning the illegality of the husband's gambling was waived. Indeed,

the judge's findings noted the absence of any argument concerning the illegality of the husband's form of betting: "The issue of the gambling losses as an illegal activity [h]as not [been] raised or argued by [the wife] and is therefore not a consideration in this decision."

We agree with the wife that there was no need to use the precise term "illegal" when describing the husband's gambling activities — one does not need to be told expressly that placing bets on college games through bookies is an "illegal" form of gambling, any more than one would need to be told expressly that obtaining cocaine from a street dealer is an "illegal" form of drug possession. The wife's failure to use the words "illegal" or "unlawful" when characterizing the husband's conduct would not make that undisputed fact disappear from this record.

However, the husband is correct when he contends that the *argument* now being made — namely, that the illegality of an expenditure makes it dissipation as a matter of law — was nowhere articulated by the wife prior to this appeal. In her proposed findings of fact and rulings of law, the wife presented no argument as to *why* the husband's gambling losses were dissipation, other than to characterize them as expenditures for "a nonmarital or family purpose" that she had allegedly opposed.[8] Nor did she limit her claim of dissipation to that portion of the husband's gambling losses that had been incurred in an unlawful manner — some of his losses had been incurred through lawful betting at casinos, and the amount of those losses had been quantified by the parties,[9] yet the wife argued that *all* of the gambling losses were dissipation. From her submissions below, it appears that the wife simply assumed that gambling losses of any type were dissipation, and that all she had to do was demonstrate the magnitude of those losses in order to have that amount treated as dissipation.[10] In that sense, the specific argument that is now being presented was not presented below.

---

[8]A review of the parties' testimony reveals no evidentiary support for the assertion that the wife expressed any objection to her husband's gambling.

[9]That figure equates to between eight and nine per cent of the total gambling losses estimated by the parties.

[10]By contrast, the husband presented arguments as to why the gambling losses should not be treated as dissipation, contending that the gambling was his "only outlet," that it was no larger than the wife's allegedly extravagant

b. *Unlawful conduct is not necessarily dissipation of marital assets.* Assuming, without deciding, that the unlawful nature of most of the husband's gambling was so apparent that its illegality did not need to be expressly argued in order to preserve this issue, we do not accept the wife's argument that illegality automatically equates with dissipation of marital assets. The concept of dissipation, or, as it is sometimes called, "waste," has taken on various attributes, potentially covering both lawful and unlawful conduct. It is those attributes, not a simple determination of unlawfulness, that govern the determination whether particular expenditures by a spouse constitute dissipation of marital assets.

While there is no definition of "dissipation" in our own case law, other jurisdictions define dissipation as a spouse's expenditures for his or her own personal enjoyment at a time when the marriage is apparently coming to an end, from which it can be inferred that the spouse's expenditures were made in order to deprive the other spouse of his or her fair share of the marital estate. See *Herron* v. *Johnson,* 714 A.2d 783, 786 (D.C. 1998), quoting *Cox* v. *Cox,* 639 A.2d 97, 99 (D.C. 1994) (dissipation is "disposition of marital property by a spouse in a manner intended to 'circumvent the equitable distribution of the marital estate,' " which may be shown by evidence that "spouse used marital property for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage was undergoing an irreconcilable breakdown"); *McCleary* v. *McCleary,* 150 Md. App. 448, 462-463 (2002), quoting *Jeffcoat* v. *Jeffcoat,* 102 Md. App. 301, 311 (1994) (dissipation consists of spending marital assets "for the principal purpose of reducing the funds available for equitable distribution"); *Harris* v. *Harris,* 261 Neb. 75, 87 (2001), quoting Am. Jur. 2d Divorce and Separation § 560 (1998) ("one spouse's use of marital property for a selfish purpose unrelated to the marriage at the time when the marriage is undergoing an irretrievable breakdown"). See also American Law Institute (ALI) Principles

expenditures on "a wide variety of material comforts" for herself, that it had not affected the husband's ability to maintain the family's comfortable lifestyle and pay for the children's education, and that it was offset by the wife's admitted conversion of approximately $110,000 of stock belonging to the husband.

of the Law of Family Dissolution: Analysis and Recommendations § 4.10(2) & comment c, at 754 (2002) (recommending that property division be adjusted to account for marital property lost or destroyed through spouse's "intentional misconduct" occurring during fixed period of time prior to commencement of proceedings, noting that "only transactions during a period immediately preceding commencement of a dissolution action should ordinarily be considered"). The concept thus incorporates an element of timing (referring to the time period after it becomes evident that the marriage will not last), and an element of intent (that the expenditure is made for the purpose of thwarting the other spouse's rights to a share of the estate in the impending divorce). Conspicuously absent from these attempts to define or describe the concept of dissipation is any requirement that the allegedly wasteful expenditure be unlawful or any pronouncement that unlawful conduct will automatically constitute dissipation.

Cases in Massachusetts have similarly invoked the concept of dissipation when dealing with expenditures by a spouse made solely for that spouse's pleasures, incurred at a time when the marriage is ending, and done in a manner that evinces a disregard for the obligations to the other spouse. See, e.g., *Ross v. Ross*, 385 Mass. 30, 37-38 (1982) (awarding wife one-half of stock owned at time of judgment nisi, where husband had thereafter failed to make payments on loans secured by that stock, lost significant portion of that stock as a result, and spent money on another woman); *Johnston v. Johnston*, 38 Mass. App. Ct. 531, 534-535 (1995) (following separation from wife, husband "embarked on a binge of high living" with other women, including frequent vacation trips and purchase of lavish homes, while transferring and encumbering other real estate in violation of court order).

However defined, the concept of dissipation must be viewed within the context of the statutory factors governing the equitable division of marital property under G. L. c. 208, § 34. In making an equitable division of property under § 34, the judge must consider "all the relevant factors" identified by the statute and must not consider "irrelevant factors," i.e., factors outside those listed in the statute. *Baccanti v. Morton*, 434 Mass. 787,

790 (2001), and cases cited. Consistent with that requirement, dissipation can be considered as part of the "conduct of the parties during the marriage" (which the judge must consider under § 34), and it can also be considered in the assessment of a spouse's "contribution" to "the acquisition, preservation or appreciation in value" of assets (which the judge may consider under § 34). "Conduct" that has harmed the marriage or the marital estate may be viewed negatively, and considered as a factor that would diminish that spouse's equitable share of marital property. However, it is conduct having an adverse impact on the marriage or the marital estate, not simply conduct that is in some other sense considered "good" or "bad," that is to be weighed.[11] An equitable division of marital property is intended to effect fairness between the parties in light of all of the circumstances, not to punish "bad" behavior or enforce the criminal laws. See *Putnam* v. *Putnam*, 5 Mass. App. Ct. 10, 15-16 (1977) (order transferring property may not be justified "purely on the basis of the blameworthy conduct of one of the spouses"). See also *Davisson* v. *Davisson*, 12 Mass. App. Ct. 420, 424 (1981) ("matters such as custody support and alimony are not affected by . . . the relative moral rectitude of the spouses"). Thus, the fact that a spouse's "conduct" during the marriage included unlawful conduct, and that the marital estate is less valuable as a result of that unlawful conduct, is but one circumstance, not necessarily determinative in itself, for a judge to consider in equitably distributing property pursuant to § 34.[12] See *Jones* v. *Jones*, 942 P.2d 1133, 1140 (Alaska 1997) (illegal

---

[11]Thus, for example, a spouse's adulterous affair during the marriage may be considered as part of the spouse's "conduct." See *Loud* v. *Loud*, 386 Mass. 473, 475 (1982); *Ross* v. *Ross*, 385 Mass. 30, 33, 37-38 (1982). Where a husband has spent money on another woman as part of an adulterous affair, that expenditure has been viewed as an improper dissipation of marital assets. See *McMahon* v. *McMahon*, 31 Mass. App. Ct. 504, 509 (1991).

[12]For example, a spouse who is a scofflaw with respect to parking and traffic restrictions may, over the course of a long marriage, incur a large total of fines and expenses — the "unlawful" nature of that spouse's driving habits does not compel the judge to tally up those fines and expenses and treat them as dissipation. A spouse's failure to make timely payment of taxes, improper disposal of hazardous waste, running a red light and striking another vehicle, or failure to carry workers' compensation insurance for his or her employees would all be examples of "unlawful" conduct that could result in significant fines, civil judgments, and legal fees. If all wrongful or unlawful conduct by a

nature of husband's gambling "is not of central importance" to determination whether his gambling was "an unreasonable depletion of marital assets").

Courts have also identified dissipation as a factor that affects a spouse's "contribution" to the marital assets, in the sense that it offsets or diminishes the value of whatever positive contributions that spouse has made. See *E.E.C.* v. *E.J.C.*, 457 A.2d 688, 695 (Del. 1983) (noting that "dissipation" is an "antonym" for "contribution"); *Anstutz* v. *Anstutz*, 112 Wis. 2d 10, 13 (Ct. App. 1983) ("court's authority to consider the contribution of each party to the marriage allows it to consider destruction or waste of the marital assets by either party"). Thus, determination whether a spouse's expenditures constitute dissipation considers them in the light of that spouse's over-all contribution, including whether the expenditures have rendered the spouse unable to support the other spouse from the much-diminished estate at the time of divorce. See *Johnston* v. *Johnston, supra* at 535 (husband's expenditures following separation "jeopardize[d] the wife's claim for an equitable division of marital assets"). See also *Wilner* v. *Wilner*, 192 A.D.2d 524, 525-526 (N.Y. 1993) (marital assets almost entirely depleted by husband's gambling); *Marriage of Rodriguez*, 266 Kan. 347, 348, 353 (1998) (where wife contributed majority of assets to marriage, and husband's arrest for drug dealing resulted in substantial forfeitures and legal fees, court equitably distributed most of remaining $90,000 in assets to wife).

Under the § 34 factors affecting the equitable division of marital property, a finding of dissipation is fact specific, considering the allegedly improper or wasteful expenditure in the context of the marriage as a whole, and then weighing it along with all of the other factors. It is not a separate category unto itself, requiring rigid or formulaic treatment, but merely a subcomponent of the mandatory and discretionary § 34 factors that, taken together, determine what division of the marital estate would be equitable. See *Williams* v. *Massa*, 431 Mass.

---

spouse that resulted in additional expenditures had to be treated as dissipation of marital assets, determinations of the equitable division of marital property would routinely be bogged down in uncovering and quantifying the financial ramifications of prior misconduct committed by either spouse.

619, 631 (2000) ("no mathematical formula" used to weigh
§ 34 factors); *Denninger* v. *Denninger,* 34 Mass. App. Ct. 429,
430 (1993) (judge has broad discretion in giving weight to § 34
factors, noting that "[m]athematical precision is not the test").

Applying principles of equitable distribution, various courts
have found dissipation in a spouse's gambling.[13] However, that
finding of dissipation has not been predicated on some inherent
feature of gambling (either lawful or unlawful) but rather on the
circumstances of the gambling activity in question — its timing,
the gambler's intent to deprive the other spouse, and the result-
ing inability to meet financial obligations to the other spouse —
that make it equitable for the gambling spouse to bear the brunt
of the losses that he or she has incurred. See *Marriage of Bell,*
576 N.W.2d 618, 624-625 (Iowa Ct. App. 1998) (increase in
amount of distribution to wife justified where husband spent
significant amounts on gambling after commencement of
divorce proceedings); *Barriger* v. *Barriger,* 514 S.W.2d 114,
114-115 (Ky. Ct. App. 1974) (on being told that wife was filing
for divorce, husband liquidated stocks and spent proceeds on
gambling, cruises, and women; dissipation justified adjustment
to property division); *Carrick* v. *Carrick,* 560 N.W.2d 407, 413
(Minn. Ct. App. 1997) (wife dissipated marital assets when she
spent significant sums gambling at casinos during pendency of
divorce proceedings); *Wilner* v. *Wilner,* 192 A.D.2d 524, 525-
526 (N.Y. 1993) (awarding wife majority of remaining marital
assets justified where, despite husband's profitable business
ventures, his extensive gambling left parties "with virtually no
assets"); *Heslop* v. *Heslop,* 967 S.W.2d 249, 255 (Mo. Ct. App.
1998) (where husband attempted to conceal settlement funds he
received after parties' separation and lost portion of those funds
gambling, wife entitled to one-half of total proceeds originally
received).

However, gambling losses are not always treated as dissipa-
tion of assets, again dependent on the attendant circumstances

___

[13]In *Yee* v. *Yee,* 23 Mass. App. Ct. 483, 484 (1987), the judge found the
husband responsible "for some wasting of the parties' joint assets by his
gambling activities," but neither that finding (nor its unspecified role in the
ultimate division of property) was challenged on appeal. That case therefore
did not address the issue of gambling as a form of dissipation, and no other
Massachusetts appellate court decision even references the issue.

surrounding that gambling, including the impact it has had on the other spouse and the other spouse's acquiescence in the activity. See *Jones* v. *Jones*, 942 P.2d 1133, 1139, 1141 n.8 (Alaska 1997) (reversing finding that gambling during marriage constituted "waste," where losses occurred prior to separation and did not interfere with husband's support of family, noting that "value judgments concerning the nature of discretionary spending during a marriage should be avoided"); *Beck* v. *Beck*, 112 Md. App. 197, 215-217 (1996) (husband converted $127,000 of assets to cash, spending some on legitimate expenses and an unknown amount on gambling trips; in light of finding that both parties enjoyed "high" standard of living, no error in determination that husband had not dissipated assets); *Marriage of Williams*, 84 Wash. App. 263, 270-271 (1996) (although wife spent "large sums" on gambling over period of years, no dissipation found where she also brought in "substantial amount of income" from three jobs and husband aware of her gambling); *Askinazi* v. *Askinazi*, 34 Conn. App. 328, 332 (1994) (wife's claim that husband dissipated assets through gambling rejected where she accompanied husband to jai alai games, voiced no disapproval of his betting on games, and shared in winnings). See also ALI Principles of the Law of Family Dissolution: Analysis and Recommendations § 4.10 Reporter's Notes to comment e, at 766 (2002) (noting that gambling losses not "easily distinguishable" from "speculative investment" for purposes of dissipation analysis).

The specific facts of the husband's gambling in this case do not support characterizing his entire $400,000 loss as a dissipation of assets for purposes of an equitable division of property pursuant to G. L. c. 208, § 34. The husband's gambling occurred throughout the parties' marriage — it was not something that started in response to the breakdown of the marriage or in anticipation of divorce. There is no suggestion that the husband intended to deprive the wife of her share of the marital estate, or that he gambled away the money rather than see it go to her. At no time was the husband derelict in his support of the wife and children — to the contrary, the wife and children were more than comfortably provided for at all times, leading "an upper class lifestyle," with college and graduate education for

the children. And, notwithstanding the magnitude of the husband's gambling losses, the marital estate to be divided now supplies the wife with ample means to maintain that same "upper class lifestyle" following divorce. See *Denninger* v. *Denninger,* 34 Mass. App. Ct. 429, 430 (1993) (one objective of § 34 award is to "provid[e] means, to the extent the marital assets allow, which enable the parties to approximate the standard of living enjoyed during marriage"). Thus, the husband's gambling losses did not and will not undermine the family's financial security or cause sacrifices in their high standard of living. Finally, while the wife did not herself participate in her husband's gambling, she was aware of it for many years and, whatever concerns she may have harbored about it, there is no evidence that she did anything to protest it. See *Askinazi* v. *Askinazi, supra.* See also *Bertholet* v. *Bertholet,* 725 N.E.2d 487, 500 (Ind. Ct. App. 2000) (other spouse's "participation in or consent to" expenditure is relevant to determination whether expenditure constituted dissipation). On these facts, the husband's gambling was not a form of "conduct" that harmed the marriage, nor did it prevent him from making a very substantial financial "contribution" to the marital estate. As such, the judge did not err in refusing to treat the entirety of the gambling losses as dissipation.

5. *Allocation of a portion of the gambling losses as dissipation.* The wife also contends that there was no basis — and indeed no articulated rationale — for the judge's decision to treat ten per cent of the gambling losses as dissipation while treating the remaining ninety per cent as ordinary expenditures. She thus argues that his decision to treat only a tiny fraction of the losses as dissipation was arbitrary. The basis for the judge's decision to charge the husband with $40,000 in dissipation of marital assets, out of $400,000 in net gambling losses over the final decade of the marriage, is not identified in his decision. The absence of any explanation supporting that particular figure is indeed troubling, but does not compel us to vacate the order of property division.

As discussed above, one of the features that makes an expenditure a dissipation of marital assets is its timing, i.e., that it is incurred at a time when the marriage is breaking up, thus

making it apparent that the expenditure will reduce the assets available to the other spouse. Here, although heavy gambling had been a regular feature of the husband's conduct throughout the parties' marriage (and thus long predated even the earliest onset of the "subtle" breakdown that allegedly occurred during the 1980's), the judge could view with particular concern the fact that the husband's gambling — and all of the risks that such heavy gambling entails — continued unabated even after the wife filed for divorce, counselling proved unsuccessful, and the husband vacated the marital home. The calculation of $400,000 in net gambling losses covered a ten-year period, and during the final year of that period, it was clear that the divorce would proceed and that the marital estate would need to be divided. Gambling losses that continued to be incurred from that point forward directly reduced the size of the marital estate at a time when the husband knew that the wife was entitled to her share of that estate. Charging the husband with dissipation for the gambling losses he incurred in that final year (calculated roughly as ten per cent of the losses incurred over that ten years) is thus not arbitrary.[14]

6. *Division of marital property.* The appropriate weighing and balancing of the § 34 factors, and the resulting equitable division of the parties' marital property, is left to the judge's broad discretion. *Williams* v. *Massa*, 431 Mass. 619, 631 (2000). *Heins* v. *Ledis*, 422 Mass. 477, 480-481 (1996). *Early* v. *Early*, 413 Mass. 720, 727 (1992). According broad discretion to the judge's division of property under the § 34 factors "is neces-

---

[14]We also note a pragmatic concern that makes us disinclined to remand the matter for further clarification of the basis of the judge's ruling. This extremely contentious divorce proceeding has been ongoing for over twelve years, with the $40,000 charge for dissipation the sole remaining issue affecting the division of an estate worth over $4 million. For the reasons discussed above, on further remand the judge could (as he did in his original judgment dividing the estate) treat none of the gambling losses as dissipation, or he could justifiably treat only $40,000 of it as dissipation. The husband has waived his cross appeal from the order requiring him to pay the wife the additional $40,000, and it does not appear that remand would result in any additional award to the wife. Where the $40,000 figure is not arbitrary, and could be supported on this record, we see no purpose in remanding this overly protracted litigation for further clarification of the justification for that figure. While the judge should have identified his rationale, it appears an exercise in futility to remand the case for him to do so at this juncture.

sary in order that the courts can handle the myriad of different fact situations which surround divorces and arrive at a fair financial settlement in each case." *Rice* v. *Rice*, 372 Mass. 398, 401 (1977). "We will not reverse a judgment with respect to property division unless it is 'plainly wrong and excessive.' " *Baccanti* v. *Morton*, 434 Mass. 787, 793 (2001), quoting *Mahoney* v. *Mahoney*, 425 Mass. 441, 447 (1997).

Other than challenging the judge's handling of her claim of dissipation of marital assets, the wife's appeal makes no claim that the judge failed to consider and balance the requisite § 34 factors. Having found dissipation in the amount of $40,000, the judge made a straightforward adjustment to the division of marital property, requiring the husband to transfer that amount directly to the wife. We see no abuse of discretion in a property division that, after consideration of all the appropriate factors (including the husband's gambling losses), awarded the wife approximately sixty-four per cent of the marital estate, an amount that enables her to continue the same comfortable lifestyle she enjoyed throughout the years of her marriage. See *Denninger* v. *Denninger*, 34 Mass. App. Ct. 429, 430 (1993). Overall, the purpose of a § 34 property division is "to recognize and equitably recompense the parties' respective contributions to the marital partnership," *Heacock* v. *Heacock*, 402 Mass. 21, 24 (1988), and "an imbalance in contributions may have an effect on the distribution." *Williams* v. *Massa*, *supra* at 632, quoting *Bacon* v. *Bacon*, 26 Mass. App. Ct. 117, 118-119 (1988). Notwithstanding his extensive gambling, this husband made significant contributions to the marital partnership, and we do not view awarding him thirty-six per cent of the marital assets — an award that already recognizes considerable "imbalance in contributions" — as "plainly wrong and excessive." *Mahoney* v. *Mahoney*, *supra*, quoting *Bowring* v. *Reid*, 399 Mass. 265, 267 (1987).

The order dividing the marital property in these proportions does not condone the husband's gambling, but merely recognizes, as it must, the actual role that that gambling played in the husband's over-all contribution to the marital estate. While society may have a significant interest in punishing and deterring the conduct in which this husband engaged, the division of

marital property under § 34 is not a mechanism for exacting that punishment or effecting deterrence. Had the husband's gambling resulted in damage to the family's well-being, or had it been intended to deprive the wife of her rightful share of the estate, the treatment of that gambling under the § 34 factors would presumably have been very different. However, the equitable division of marital property deals in the reality of the parties' past conduct and contributions and their present situation and needs, not in hypothetical, abstract, or judgmental consideration of how a spouse's shortcomings — or even unlawful behavior — might have harmed the other spouse or the family's interests. On the facts of this case, the husband's gambling losses, despite their magnitude, did not adversely affect the family, and the application of the § 34 factors did not compel the judge to make an even larger adjustment to the division of marital property in favor of the wife.

*Judgment affirmed.*