Portsmouth Family Division
No. 2007-100

### IN THE MATTER OF SUSAN MARTEL AND ROBERT MARTEL

Argued: January 16, 2008
Opinion Issued: March 21, 2008

54

*Heidi E. Shealy*, of Stratham, by brief and orally, for the petitioner.

*Borofsky, Amodeo-Vickery & Bandazian, P.A.*, of Manchester (*Erica Bodwell* on the brief and orally), for the respondent.

HICKS, J. The respondent, Robert Martel, appeals from a final decree of divorce issued by the Portsmouth Family Division (*Sadler*, J.). The petitioner, Susan Martel, cross-appeals. We affirm in part, reverse in part, vacate in part and remand.

## I. Background

The record supports the following. The parties married in November 1985 and had one child in July 1988. The petitioner filed for divorce in April 2005 alleging the fault grounds of adultery, RSA 458:7, II (2004), and treatment so serious as "to injure health or endanger reason," RSA 458:7, V (2004). The respondent filed a cross-petition for divorce, alleging that irreconcilable differences caused the irremediable breakdown of the marriage. RSA 458:7-a (Supp. 2007).

Following a three-day trial, the court granted a decree of divorce on the grounds that irreconcilable differences caused the irremediable breakdown

of the marriage. The final decree ordered an unequal division of assets in favor of the petitioner. In addition to other assets, she received the marital home, her retirement plans, and her stock option plans through her employer. The respondent was awarded, among other assets, the parties' property in Laconia and his IRA account.

The respondent argues that the trial court erred by: (1) granting an unequal distribution of the marital assets in favor of the petitioner; and (2) failing to find the petitioner in violation of a temporary non-hypothecation order issued by the court. The petitioner cross-appeals, arguing that the trial court erred by: (1) failing to grant her a fault-based divorce pursuant to RSA 458:7, V; (2) failing to find the respondent in contempt for his failure to comply with a May 5, 2006 order; (3) failing to award the petitioner attorney's fees and costs; and (4) failing to order that any interest earned on the parties' joint certificate of deposit be divided equally.

## II. Respondent's Issues

### A. Property Distribution

The respondent first argues that the trial court unsustainably exercised its discretion by unequally dividing the marital assets in favor of the petitioner. The court held that

> an unequal distribution of the marital assets is fair and equitable based on the duration of the marriage, the need of the custodial parent in occupying the marital residence and the actions of [the respondent] which caused the diminution in value of property owned by the parties which resulted in substantial economic loss to the marital estate.

■ "[W]e afford trial courts broad discretion in determining matters of property distribution in fashioning a final divorce decree, [and] we will not overturn the trial court's decision absent an unsustainable exercise of discretion. If the court's findings can reasonably be made on the evidence presented, they will stand." *In the Matter of Hampers & Hampers*, 154 N.H. 275, 285 (2006) (quotation and citation omitted).

RSA 458:16-a, II (2004) creates a presumption that equal distribution of marital property is equitable. *Id.* The statute enumerates various special circumstances for the court to consider in determining that an equal distribution "would not be appropriate or equitable." RSA 458:16-a, II. The following factors were highlighted by the court in this case: the "duration of the marriage," RSA 458:16-a, II(a); the "need of the custodial parent . . . to occupy or own the marital residence," RSA 458:16-a, II(e); and the "actions of either party during the marriage which contributed to the

growth or diminution in value of property owned by either or both of the parties," RSA 458:16-a, II(f). The respondent argues that the court misapplied these factors. We address each factor in turn.

### 1. Duration of the Marriage

■ The record shows that, at the time of their divorce, the parties had been married for almost twenty years. A long-term marriage is a factor which justifies an *equal* division of assets. *See McAlpin v. McAlpin*, 129 N.H. 737, 740 (1987) ("Special circumstances that may justify an unequal distribution include, among others: (1) a marriage of short duration . . . ."). The trial court, therefore, misapplied this factor to justify an unequal division of the parties' assets.

### 2. Custodial Parent Occupying Marital Residence

The respondent argues that the court erred in relying upon this factor to award an unequal property distribution because the marital home was owned outright, the parties' only child was eighteen years old at the time of the divorce, and the petitioner earned a significant income and received significant child support with which to provide for their son.

RSA 458:16-a, II(e) provides that the court may consider "[t]he need of the custodial parent, if any, to occupy or own the marital residence and to use or own its household effects."

■ Our review of the record shows that the parties' son was eighteen years old at the time of the divorce, the marital home was unencumbered and the petitioner had a gross monthly income of over six thousand dollars. Upon the facts of this case, therefore, RSA 458:16-a, II(e) does not provide a sufficient basis for the trial court to award an unequal division of the assets.

### 3. Diminution in Value of Property

Sometime around 1997, the parties set up an investment account with Morgan Stanley/Dean Witter for retirement. From 1999 until the account was closed in 2001, it lost approximately one million dollars through a series of risky investments. The court found, and the respondent does not dispute, that the respondent managed the investment account. The court further found "that [the respondent's] actions in stock trading caused . . . the loss of over $1,000,000.00 in family assets," and based the unequal asset distribution, at least in part, upon this loss.

RSA 458:16-a, II(f) provides that the court may consider, as a special circumstance justifying an unequal division of assets, "[t]he actions of

either party during the marriage which contributed to the growth or diminution in value of property owned by either or both of the parties."

The respondent argues that the term "diminution" in RSA 458:16-a, II(f) equates to the term "dissipation" and "requires a finding of wrongful intent, at the time when the marriage is coming to an end, to deprive the other spouse of his or her fair share of the marital estate." He argues that the loss occurred five years before either party contemplated divorce, there was no evidence to suggest that he acted with the intent to deprive the petitioner of assets, and the court failed to consider his actions in increasing the value of marital assets as well as the substantial tax credit the parties took for the stock loss.

> In matters of statutory interpretation, we are the final arbiters of the legislative intent as expressed in the words of the statute considered as a whole. When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.

*In the Matter of Carr & Edmunds*, 156 N.H. 498, 504 (2007) (citations omitted).

■ The word "dissipation" does not appear in the statute and we disagree with the respondent that this term equates with the phrase "diminution." BLACK'S LAW DICTIONARY defines "diminution" as "[t]he act or process of decreasing, lessening, or taking away." BLACK'S LAW DICTIONARY 490 (8th ed. 2004). In contrast, "dissipation" is defined as "[t]he use of an asset for an illegal or inequitable purpose, such as a spouse's use of community property for personal benefit when a divorce is imminent." *Id.* at 506. The plain language of RSA 458:16-a, II(f), therefore, does not require malicious intent. In addition, the statute does not require that the conduct occur in anticipation of divorce as it allows the trial court to consider "[t]he actions of either party *during the marriage*," RSA 458:16-a, II(f) (emphasis added). *See In re Marriage of Coyle*, 671 N.E.2d 938, 943 (Ind. Ct. App. 1996) ("The [Indiana] statute directs the trial court to examine the conduct of the parties 'during the marriage,' so that the court is not limited to an examination of any particular time period." (citation omitted)).

We decline, therefore, to adopt the law from those jurisdictions that requires either an intent or timing element to justify an unequal division of assets where a spouse's conduct resulted in the loss of marital assets. *See, e.g.*, *Kittredge v. Kittredge*, 803 N.E.2d 306, 313 (Mass. 2004) (citing cases

where courts "define dissipation as a spouse's expenditures for his or her own personal enjoyment at a time when the marriage is apparently coming to an end, from which it can be inferred that the spouse's expenditures were made in order to deprive the other spouse of his or her fair share of the marital estate").

We look, instead, to those jurisdictions which have declined to read an intent or timing element into their asset distribution statutes but have applied other factors relevant in determining whether a spouse's actions justify an unequal property distribution.

The Court of Appeals of Washington has instructed its trial courts that they may consider "whose negatively productive conduct depleted the couple's assets and . . . apportion a higher debt load or fewer assets to the wasteful marital partner." *In re Marriage of Williams*, 927 P.2d 679, 683 (Wash. Ct. App. 1996) (quotation omitted), *review denied*, 937 P.2d 1102 (Wash. 1997). In *Williams*, the court approved the trial court's consideration of various factors to determine that the wife's gambling losses throughout the marriage did not amount to a dissipation of marital assets. *Id.* The factors the trial court considered included: the amount of income the wife brought into the marriage; the nature of the conduct (the court equated legalized gambling to an "entertainment cost[ ]"); and the husband's knowledge of the wife's gambling. *Id.*

The Supreme Judicial Court of Massachusetts adopted a similar view in *Kittredge*: "[D]etermination whether a spouse's expenditures constitute dissipation considers them in the light of that spouse's over-all contribution, including whether the expenditures have rendered the spouse unable to support the other spouse from the much-diminished estate at the time of divorce." *Kittredge*, 803 N.E.2d at 315.

■ We find these cases persuasive and hold that in applying RSA 458:16-a, II(f) to support an unequal distribution of assets due to a spouse's conduct which resulted in a diminution in value of property, a trial court must consider factors such as: conduct which contributed to the growth in value of property; the nature of the conduct; the other spouse's knowledge of the conduct; whether the conduct diminished the total marital assets to such an extent that the other spouse is unable to maintain a similar lifestyle following divorce; and any other factor the court deems relevant.

■ There is evidence in the record before us, and the trial court found, that the respondent contributed the initial start-up funds deposited into the account from the purchase and sale of properties and businesses. The petitioner also testified that she was aware that the respondent had invested money in the stock market and that he managed the account daily. In addition, there is evidence in the record that the parties had other

significant marital assets besides the stock account, and that the stock loss allowed the parties to claim a loss on their taxes, contributing to a tax credit of nearly $131,000. The record fails to show that the trial court considered these factors when it found that "the actions of [the respondent] . . . caused the diminution in value of property owned by the parties."

Accordingly, we vacate the trial court's division of the marital assets and remand to determine asset distribution in a manner consistent with this opinion.

### B. Violations of Non-hypothecation Order

On April 20, 2005, the court issued a notice containing the following language:

Until further order of the court, each party is restrained from selling, transferring, encumbering, hypothecating, concealing or in any manner whatsoever disposing of any property, real or personal, belonging to either or both parties except (1) by written agreement of both parties, or (2) for reasonable and necessary living expenses, or (3) in the ordinary and usual course of business.

(Emphasis omitted).

At the final divorce hearing, the respondent submitted the following request for a finding of fact: "On or about April 11, 2005, [the petitioner] cashed in stock options valued at $3,372.28. On March 6, 2006, she cashed in stock options valued at $3,114.73, $4,492.76; on March 29, 2006, $3,470.04; on May 31, 2006, $5,880.87; and on August 2, 2006, $3,115.91;" and the following request for a ruling of law: "[The petitioner] violated the terms of the temporary order by cashing in stock options, which constituted a marital asset, and is a violation of the temporary decree without just cause. Respondent's Motion for Contempt and Attorney's Fees should be granted."

The court denied the respondent's requests, holding: "The court took into consideration the actions of the parties leading up to the final hearing and consideration of all assets in making the final order."

The respondent argues that the trial court engaged in an unsustainable exercise of discretion by denying these requests for a finding of fact and a ruling of law. He argues that the petitioner directly violated the court's order by withdrawing money from their joint bank accounts in April 2005, cashing in stock options in 2006 and borrowing money from her 401(k) in October 2006.

We note that the requests for a finding of fact and a ruling of law which the respondent submitted to the trial court were limited to the issue of the

petitioner cashing in stock options. We decline to address, therefore, his additional arguments on appeal that the petitioner further violated the court order by withdrawing money from their joint bank account and borrowing money from her 401(k) as they are not properly before us.

■ We turn now to the respondent's allegation that the petitioner cashed in stock options in violation of the court's April 20, 2005 order. The respondent cites five dates on which the petitioner allegedly cashed in stock options. The first allegedly occurred on April 11, 2005, nine days before the court issued its order. This act, therefore, cannot be a violation of an order that had yet to be issued. As to the remaining occurrences, the petitioner admitted at trial that she cashed in the stock options to pay her attorney and her accountant. Accordingly, we reverse the court's denial of this requested finding of fact as an unsustainable exercise of discretion.

■ The trial court also denied the respondent's request for a ruling of law that the petitioner violated the court's order without just cause and his request that she be held in contempt and pay his attorney's fees. While we cannot say that a finding that the petitioner violated the order without just cause or a finding of contempt is required under these circumstances, *see In the Matter of Giacomini & Giacomini*, 150 N.H. 498, 500 (2004) ("The contempt power is discretionary and the proper inquiry is not whether we would have found the respondent in contempt, but whether the trial court unsustainably exercised its discretion in refusing to do so."), given the court's error in denying the above finding of fact, we vacate the court's denial of the respondent's requested ruling of law and motion for contempt and remand for reconsideration.

## III. Petitioner's Issues

### A. Grounds for Divorce

■ The petitioner first argues that the trial court erred in failing to award a divorce pursuant to RSA 458:7, V, which provides for a fault-based divorce when a party "has so treated the other as seriously to injure health or endanger reason." To obtain a divorce on fault grounds under RSA 458:7, V, "the petitioner was required to show that: (1) the respondent so treated her as 'seriously to injure health or endanger reason' during the marriage, RSA 458:7, V; and (2) the respondent's behavior was the *primary cause* of the breakdown of the marriage." *In the Matter of Mannion & Mannion*, 155 N.H. 52, 56 (2007).

Whether the irremediable breakdown of the marriage was caused by irreconcilable differences or the fault of one of the parties was a factual

question for the trial court. *Id.* We will affirm the trial court's factual findings unless the evidence does not support them or they are legally erroneous. *Id.*

At trial, the respondent's counsel asked the petitioner to give her opinion of the "primary and overriding cause for the failure of [the] marriage." The petitioner replied: "I lived with a man who was unhappy every day of his life in the house with me. He spent an inordinate amount of time with other people having a great time. And I got tired of living with someone who spent his time with someone else." Although the petitioner also testified to instances of the respondent's conduct to substantiate her allegations of treatment so serious as to injure health or endanger reason, the above testimony is evidence, which the court was entitled to consider, that the primary cause for the breakdown of the marriage was irreconcilable differences. In the final decree of divorce, the trial court found that the petitioner "failed to substantiate that [the respondent's] conduct during the course of the marriage was treatment so as to seriously endanger her health or reason." The court also found that the petitioner's allegations that the respondent had an affair were not proven.

We cannot say, therefore, that the trial court engaged in an unsustainable exercise of discretion as there is evidence in the record to support its finding that irreconcilable differences, and not misconduct on the part of the respondent, caused the irremediable breakdown of the marriage. *See* RSA 458:7-a.

### B. Contempt

In response to a motion for contempt filed by the petitioner, the court issued an order on May 5, 2006, finding the respondent in contempt for failing to comply with a previous order to return funds, which he had withdrawn, to the parties' joint account at Eastern Savings Bank (Eastern Account). In July 2006, the petitioner submitted another motion for contempt, arguing that the respondent had failed to return the full amount to the Eastern Account. The trial court addressed this issue in the final decree of divorce, holding: "[The respondent] shall repay the deficit remaining from the reimbursement order issued by the court in respect to the Eastern Account." The petitioner submitted a motion for reconsideration on November 30, 2006, arguing that the trial court "overlooked" her July 2006 motion and again requested a finding that the respondent be held in contempt. Although the record does not reflect that the trial court issued an order specifically addressing the petitioner's motion for reconsideration, in an order issued December 29, 2006, the court denied a request from the respondent to deposit the amount still owed directly into the Eastern Account, ruling: "returning these particular funds would be equitable and

efficient being paid directly to [the petitioner] as time has passed since the original reimbursement order in May 2006."

The petitioner argues that the trial court erred in failing to find the respondent in contempt for failing to follow the court's May 2006 order and that she is entitled to attorney's fees under RSA 458:51 (2004).

■ We refer to the standard of review we laid out above regarding a trial court's refusal to find a party in contempt. The record reveals that the court was aware of the respondent's repeated failure to replace the funds in the Eastern Account, in direct violation of the court's orders, when it issued its final decree and subsequent order. Although the court is not compelled to find the respondent in contempt, *see Giacomini,* 150 N.H. at 501, the court's order fails to offer justification for why the respondent should not be held in contempt, given his repeated and undisputed violations of the court's orders. Accordingly, we vacate and remand for reconsideration.

### C. Attorney's Fees

The petitioner argues that the trial court erred by denying her multiple requests for attorney's fees.

■■ "An award of attorney's fees must be grounded upon statutory authorization, a court rule, an agreement between the parties, or an established exception to the rule that each party is responsible for paying his or her own counsel fees." *Hampers,* 154 N.H. at 289 (quotation omitted). We review the trial court's denial of attorney's fees under an unsustainable exercise of discretion standard, giving deference to the trial court's decision. *Arcidi v. Town of Rye,* 150 N.H. 694, 704 (2004). "To be reversible on appeal, the discretion must have been exercised for reasons clearly untenable or to an extent clearly unreasonable to the prejudice of the objecting party. If there is some support in the record for the trial court's determination, we will uphold it." *Id.* (quotation omitted).

First, the petitioner argues that the court erred in denying her request for the attorney's fees she incurred regarding a domestic violence matter before the court in April 2006. In the domestic violence final order, the court held that the issue of attorney's fees would be addressed in the divorce proceedings. The court subsequently denied the petitioner's request, holding that it "cannot find an adequate basis on which to make such an award under the facts presented."

■ The petitioner argues that she is entitled to attorney's fees pursuant to RSA 173-B:5 (Supp. 2007), which addresses the types of relief a court may grant to the victim of domestic violence. The statute reads, in pertinent part: "Other relief *may* include: . . . (b) Other relief including, but not

limited to: . . . (10) Ordering the defendant to pay reasonable attorney's fees." RSA 173-B:5, I (emphasis added). Under the plain meaning of the statutory language, the award of attorney's fees is permissive; the trial court is not required to order such relief.

As the party appealing this issue, the petitioner must demonstrate that the court's order was clearly untenable or unreasonable to the prejudice of her case. See Arcidi, 150 N.H. at 704. The petitioner fails to articulate any facts that would compel an award of attorney's fees under RSA 173-B:5, aside from the fact that a domestic violence final order was entered against the respondent. She has not met her burden, therefore, to demonstrate that the court engaged in an unsustainable exercise of discretion.

The petitioner also argues that she was entitled to attorney's fees in the domestic matter under Harkeem v. Adams, 117 N.H. 687 (1977). Harkeem provides for attorney's fees "[w]here an individual is forced to seek judicial assistance to secure a clearly defined and established right" and the opposing party has acted in bad faith. Id. at 691. The petitioner's entire argument on this issue consists of the following statement: "[The respondent's] numerous violations of the court orders caused [the petitioner] to incur attorney's fees as she attempted to secure her safety, a clearly defined and established right." We find this argument to be inadequately developed, and we therefore decline to address it. See Landry v. Landry, 154 N.H. 785, 791 (2007).

Next, the petitioner argues that the trial court erred in denying her requests for attorney's fees in the divorce litigation "due to [the respondent's] oppressive, vexatious, arbitrary, capricious, or bad faith conduct." The petitioner relies upon our decision in Harkeem.

Of the petitioner's numerous allegations of bad faith listed in her brief, the record reveals that the trial court did award attorney's fees on some of her requests. Regarding her other allegations, we can find no "clearly defined and established right," as contemplated by Harkeem, which the petitioner sought to secure justifying an award of attorney's fees. Harkeem, 117 N.H. at 691. The parties were engaged in a contentious divorce, which is adversarial by nature, and the petitioner's assertions of the respondent's bad faith amount to disagreements and accusations in which both parties engaged. Cf. Blouin v. Sanborn, 155 N.H. 704, 708 (2007) ("There were numerous factual and legal issues that were in contest. . . . The rights in this case were far from clearly defined." (quotations omitted)).

Accordingly, we cannot say that the trial court engaged in an unsustainable exercise of discretion in denying the petitioner's requests for attorney's fees.

## D. Equal Division of Interest Earned

Finally, the petitioner argues that the trial court erred by failing to order that interest earned on the parties' joint certificate of deposit be divided equally.

We need not decide this issue, however, given that we vacate the court's property distribution in its entirety.

*Affirmed in part; reversed in part; vacated in part; and remanded.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.