NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2020-0316

TOWN OF LINCOLN

v.

JOSEPH CHENARD

Argued: June 15, 2021
Opinion Issued: January 19, 2022

Hastings Malia P.A., of Fryeburg, Maine (Peter J. Malia and Jason B. Dennis on the brief, and Peter J. Malia orally), for the plaintiff.

Bruce J. Marshall Law Offices, PLLC, of Bow (Bruce J. Marshall on the brief and orally), for the defendant.

MACDONALD , C.J. The defendant, Joseph Chenard, appeals an order of the Superior Court (MacLeod, J.) ruling that he is operating or maintaining a junk yard in violation of RSA 236:114. See RSA 236:114 (2009). The plaintiff, Town of Lincoln (town), cross-appeals the trial court's denial of its request for costs and attorney's fees. See RSA 676:17, II (2016). We affirm.

I. Background

The trial court found the following facts. The defendant owns the properties at issue, consisting of four lots located in the town's "General Use"

zoning district, which allows junk yards only by special exception. The properties contain "large amounts of personal belongings" stored "both outdoors and in a number of sheds, which are generally in a dilapidated condition." During its view of the properties, the court observed "old or used scrap metal including numerous machine or automotive parts, tires, wheels, cables and wiring, woodstoves, snowplows, construction debris, steel drums, plastic barrels, and other detritus." In addition, the court observed "several automobiles that did not appear to be in working order, as well as old snowmobiles, lawnmowers, and ATVs, an old boat, and two semi-trailers." All of the materials stored on the defendant's properties belong to him and are stored there for his personal use. The defendant does not have a license to operate a junk yard business, nor does he have a special exception from the town.

The town sought injunctive relief to stop the defendant from operating a junk yard in violation of RSA 236:114, see RSA 236:128, I (2009), and the town's zoning ordinance. In addition, the town sought the imposition of civil penalties, see RSA 236:128, III (2009), and an award of costs and attorney's fees, see RSA 676:17, II. Following a hearing, the trial court found that the defendant is operating or maintaining a junk yard in violation of RSA 236:114 and that his properties are, therefore, a nuisance. See RSA 236:119 (2009). The court ordered the defendant to end his violation of RSA 236:114 and abate the nuisance by a certain date and, if he failed to do so, authorized the town to impose a civil penalty of up to $50 per day for every day the nuisance continued and until such time as the nuisance was abated to the town's satisfaction. See RSA 236:128, III. The trial court denied the town's request for costs and attorney's fees.

Subsequently, the parties each moved for reconsideration. The court denied the defendant's motion for reconsideration, partially granted the town's motion for reconsideration, and modified its order in part. In addressing the town's request to reconsider the trial court's denial of costs and attorney's fees, the court agreed it had overlooked that the town's petition also sought to enforce the local zoning ordinance. Nonetheless, the court determined that, under the ordinance, the defendant must sell junk in order to operate a junk yard. Because all of the materials stored on the defendant's properties belonged to him and were stored there for his personal use, the court concluded that the defendant was not using his properties as "Junk Yards" under the zoning ordinance. This appeal followed.

II. Analysis

On appeal the defendant argues that the trial court erred as a matter of law by: (1) applying the provisions of RSA 236:111-:129 to the defendant's non-business personal properties; (2) determining that the defendant was operating a junk yard without specifying which of his individual properties

2

qualified as such; and (3) applying the wrong statute. In its cross-appeal, the town argues that the trial court unsustainably denied its request for attorney's fees, contending that because it "prevailed in enforcing its zoning ordinance through legal action," it is entitled to an award of its costs and attorney's fees pursuant to RSA 676:17, II.

A.  Standards of Review

We defer to the trial court's findings of fact if they are supported by the evidence and are not erroneous as a matter of law. City of Rochester v. Corpening, 153 N.H. 571, 573 (2006). We review the trial court's statutory interpretation de novo. Anderson v. Robitaille, 172 N.H. 20, 22 (2019). We first look to the language of the statute itself and, if possible, construe that language according to its plain and ordinary meaning. Id. We give effect to every word of a statute whenever possible and will not consider what the legislature might have said or add language that the legislature did not see fit to include. In re J.P., 173 N.H. 453, 460 (2020). We also construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Anderson, 172 N.H. at 22-23. However, we do not construe statutes in isolation; instead, we attempt to construe them in harmony with the overall statutory scheme. Id. at 22.

"The interpretation of a zoning ordinance is a question of law, which we review de novo. Because the traditional rules of statutory construction govern our review, we construe the words and phrases of an ordinance according to the common and approved usage of the language." Town of Barrington v. Townsend, 164 N.H. 241, 246 (2012). "[W]e determine the meaning of a zoning ordinance from its construction as a whole, not by construing isolated words or phrases." Working Stiff Partners v. City of Portsmouth, 172 N.H. 611, 616 (2019).

"An award of attorney's fees must be grounded upon statutory authorization, a court rule, an agreement between the parties, or an established exception to the rule that each party is responsible for paying his or her own counsel fees." In the Matter of Martel & Martel, 157 N.H. 53, 63 (2008) (quotation omitted). We review the trial court's denial of attorney's fees under an unsustainable exercise of discretion standard. Id. "To be reversible on appeal, the discretion must have been exercised for reasons clearly untenable or to an extent clearly unreasonable to the prejudice of the [appealing] party. If there is some support in the record for the trial court's determination, we will uphold it." Id. (quotation omitted).

B.  State Junk Yard Statute

RSA chapter 236 contains several subdivisions setting forth "Highway Regulation, Protection and Control Regulations." RSA 236:111-:129 (2009 &

3

Supp. 2020). RSA 236:111-:129 cover motor vehicle recycling yards and junk yards. Pursuant to RSA 236:114, "[a] person shall not operate, establish, or maintain a junk yard . . . until he (1) has obtained a license to operate a junk yard business and (2) has obtained a certificate of approval for the location of the junk yard." To obtain a license, an applicant must apply in writing to the municipality's local governing body, accompanied by a certificate from the zoning board of adjustment that the proposed location does not violate the zoning ordinance. See RSA 236:115. Following a hearing at which the local governing body takes into account, among other things, the suitability of the applicant to comply with regulations applicable to junk yards, the location of the junk yard, and aesthetics, the application must either be approved or denied within two weeks. See RSA 236:116-:118, :120-:121.

With two exceptions not applicable here, the subdivision applies to all junk yards as defined in RSA 236:112, I. See RSA 236:111-a, I; see also RSA 236:12. "Junk yard" is defined as

> a place used for storing and keeping, or storing and selling, trading, or otherwise transferring old or scrap copper, brass, rope, rags, batteries, paper, trash, rubber debris, waste, or junked, dismantled, or wrecked motor vehicles, or parts thereof, iron, steel, or other old or scrap ferrous or nonferrous material.

RSA 236:112, I. The express purpose of the subdivision is

> to conserve and safeguard the public safety, health, morals, and welfare, and to further the economic growth and stability of the people of the state through encouragement to the development of the tourist industry within the state. A clean, wholesome, attractive environment is declared to be of importance to the health and safety of the inhabitants and the safeguarding of their material rights against unwarrantable invasion. In addition, such an environment is considered essential to the maintenance and continued development of the tourist and recreational industry which is hereby declared to be of significant and proven importance to the economy of the state and the general welfare of its citizens. At the same time, it is recognized that the maintenance of junk yards as defined in this subdivision, is a useful and necessary business and ought to be encouraged when not in conflict with the express purposes of this subdivision.

RSA 236:111 (2009). The defendant argues that the trial court erred because "[t]he Legislature clearly intended" the statutory scheme "to apply to businesses when they wrote that junk yards as defined in the subdivision were useful and necessary

4

businesses." (Bolding omitted.) The town counters that the trial court correctly concluded that under RSA 236:112, a junk yard need not be a place of business, "but may be any 'place' used for the purposes enumerated in that statute." (Quotation omitted.) We agree with the town.

As defined in the subdivision, a junk yard includes "a place" used for "storing and keeping" or "storing and selling" or "otherwise transferring" the items enumerated in the statute. RSA 236:112, I. Thus, under the plain and ordinary meaning of the words used, a person can "stor[e] and keep[]" the items listed at "a place" and thereby be considered to "maintain" a junk yard for which he must obtain a license under RSA 236:114, regardless of whether the items are also stored and sold.

Our interpretation of the plain and ordinary meaning of "junk yard" is consistent with the express purposes to "conserve and safeguard the public safety, health, morals, and welfare"; further economic growth by encouraging tourism; and declare that a clean, wholesome and attractive environment is of importance "to the health and safety of the inhabitants" of the state and "essential to" maintaining and developing the industries of tourism and recreation. See id.

Although one definition of the word "business" is "[a] commercial company, firm, or enterprise conducting such activity," this is not the only meaning of the word. The Oxford English Dictionary, https://www.oed.com/view/Entry/25229?redirectedFrom=business#eid (last visited Jan. 15, 2022). Another definition of "business" is "action which occupies time and demands attention and effort." Id. Construing the evident purposes of the statute together with the broad statutory definition of junk yard, we determine that the word "business" in RSA 236:111 encompasses junk yards not operated as a commercial business. See Appeal of Town of Belmont, 172 N.H. 61, 65 (2019) ("[W]e construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result."); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 57 (2012) ("[P]urpose . . . cannot be used to contradict text or to supplement it.").

Furthermore, the subdivision expressly creates an exception from the definition of junk yard in RSA 236:112, I, for "noncommercial antique motor vehicle restoration activities." RSA 236:111-a, III. Pursuant to that section, the subdivision "shall not apply" to such "noncommercial" activities provided that, among other requirements, "[a]ll antique motor vehicles kept on the premises are owned by the property owner." Id. If the definition of junk yard in RSA 236:112, I, were intended to cover only commercial junk yards, the exception set forth in RSA 236:111-a, III would be rendered superfluous. See Silva v. Botsch, 120 N.H. 600, 602 (explaining that construing a statute to render some provisions superfluous is inconsistent with legislative intent).

5

The defendant next argues that the trial court erred as a matter of law "when it determined that the placement of items listed in RSA 236:112 on four private residential properties constituted each to be a junk yard, regardless of quantity of each item as to each property." (Bolding and capitalization omitted.) According to the defendant, RSA 236:112 "is in reference to one 'place' not places," and "[y]et the Trial Court Order is devoid of any affirmation as to which of the lots are junk yards." We disagree. The defendant's properties include his house lot and three lots across the street adjacent to one another. The trial court's order reflects the court's observations made during its view of those properties, including that the defendant "has amassed large amounts of personal belongings that he stores at his Properties," and that he "is using his properties to store and keep . . . most, if not all of the items identified in" the statute. We read this language to mean that the trial court found that each of the parcels satisfies the definition of "junk yard" and, thus, collectively the defendant's properties constitute a "place" where the defendant is operating or maintaining a junk yard. See RSA 236:112, I.

Finally, the defendant argues that because "the subject parcels of land are within New Hampshire's limited access highway system for I-93," RSA 236:90-:110 is the "correct" statutory subdivision to apply. Because a junk yard under that subdivision is defined as "an establishment or place of business," the defendant asserts that his non-business use of his property falls outside that definition of junk yard. See RSA 236:91, IV (2009). However, the provisions of RSA 236:111-:129 "apply to all junk yards, as defined by RSA 236:112, I, including . . . those subject to regulation under RSA 236:90-110." RSA 236:111-a, I. Accordingly, pursuant to RSA 236:111-a, the town has authority to regulate all junk yards in the town that fall within the definition of "junk yard" in RSA 236:112, I, including those that are located adjacent to the interstate and turnpike system, but which are not "an establishment or place of business." RSA 236:91, IV; see RSA 236:90 (2009).

We hold that the trial court did not err in finding that the provisions of RSA 236:111-:129 apply to the defendant's properties, and that the defendant is operating or maintaining a junk yard in violation of RSA 236:114.

C. Attorney's Fees

The trial court ruled that the town failed to prove the defendant's use of his properties constituted a junk yard use under the town's zoning ordinance and, therefore, the town was not entitled to recover its attorney's fees under RSA 676:17, II. In its cross-appeal, the town argues that, because the trial court found that the town "applies the definition of 'junk yard'" contained in RSA 236:112 "to determine whether a landowner's use of his property constitutes" a junk yard under the zoning ordinance, the court erroneously "went beyond" that finding to interpret the ordinance and conclude that a junk yard must sell junk. The town asserts that under the definition of junk yard in

6

RSA 236:112, which was "the statutory definition that was relied upon by the Town and accepted by the trial court as the controlling definition for purposes of determining whether a junk yard violation was present on [the defendant's] lots," there is no requirement "that a junk yard actually sell anything."

The town, however, misconstrues the trial court's order.  Although the town introduced evidence that it "presently interprets the term 'Junk Yard' in the ordinance as the term is defined in RSA 236:112," the trial court concluded that was not "competent evidence of the enacting body's intent" for purposes of discerning the meaning of "Junk Yards" as used in the zoning ordinance. Contrary to the town's position, the trial court found that the ordinance neither defines the term "Junk Yards," nor incorporates by reference the statutory definition of junk yard in RSA 236:112.  Thus, we understand the town's argument on appeal to be limited to whether the term "junk yards," as used in the zoning ordinance, encompasses the defendant's use of his properties.

The court looked to the dictionary meaning of the term junk yard and defined it as "a yard used to keep usu[ally] resalable junk."  Webster's Third New International Dictionary 1227.  The court determined that "usually resalable junk" means that the yard "must be devoted, at least to some extent, to the selling or reselling of junk."  Because the items stored on the defendant's properties belong to him and are stored there for his personal use, the trial court concluded that the term "junk yards," as used in the zoning ordinance, did not encompass the defendant's use of his properties.

The town argues that, because the definition relied upon by the trial court includes the word "usually," a junk yard "does not always have to keep junk that is 'resalable.'"  In addition, the town points to a dictionary definition that defines junk yard as "a yard used to store sometimes resalable junk." (Quoting Merriam Webster, http://www.merriam-webster.com/dictionary/junkyard (last visited Jan. 15, 2022).  That definition, the town asserts, "does not require that a junk yard be devoted, to any extent, 'to the selling or reselling of junk.'"  Accordingly, the town concludes that the term "junk yards" in the ordinance does encompass the use of his properties. We disagree.

The ordinance establishes seven districts and sets forth a "Land Use Schedule" of uses permitted in each district.  Town of Lincoln, New Hampshire Land Use Plan Ordinance art. VI §§ A, B(2) (2021).  The Land Use Schedule contains four general categories of potentially permitted uses: Residential Uses; Public Uses; Business Uses; and Industrial Uses.  Id. at § B(2).  Within the category of Industrial Uses are five specific uses: Junk Yards; Earth, gravel & stone removals; Manufacturing other than Home Business; Storage of contractor's equipment; and Bulk storage, warehousing. Id.  The defendant's properties are located in the General Use district.  Junk yards are permitted in the General Use district only by special exception.  Id.

7

Although the ordinance does not specifically define "junk yards," and although, when construed in isolation, the term "junk yard" may be subject to multiple reasonable interpretations, it is plain from its context and structure that the zoning ordinance regulates "junk yards" as an "industrial use." The storage of one's own personal belongings on one's own property is not an "industrial use." Accordingly, viewing the ordinance as a whole, see Working Stiff Partners, 172 N.H. at 616, we conclude that the term "junk yards" does not encompass the defendant's use of his properties.

The town makes no other argument in support of its claim for an award of costs and fees under RSA 676:17, II. Therefore, we affirm the trial court's ruling that the town was not entitled to recover its costs and attorney's fees under that statute. See Town of Londonderry v. Mesiti Dev., 168 N.H. 377, 385 (2015) (noting that "[t]his court will sustain the decision of the trial court if there are valid alternative grounds to support it"). Although the town prevailed in its action to enforce the State junk yard statute, that statutory scheme does not authorize an award of costs and attorney's fees. See RSA 236:111-:129; see also Bedard v. Town of Alexandria, 159 N.H. 740, 746 (2010) (explaining that the mandatory fee provision under RSA 676:17, II was not incorporated into the State's statutory scheme regulating local excavations).

Affirmed.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred; BASSETT, J., concurred in part and dissented in part.

BASSETT, J., concurring in part and dissenting in part. I agree with the court's construction of the state junk yard statute and the conclusion that the defendant's use of his properties violates that statute. See RSA 236:111-:129. I disagree, however, with the court's conclusion that, notwithstanding the defendant's failure to secure a special exception, the defendant's storage of junk for personal use does not violate the town's zoning ordinance. Accordingly, I respectfully dissent from that portion of the court's opinion.

The court concludes that, because the "zoning ordinance regulates 'junk yards' as an industrial use," and the defendant's storing of junk on his properties for his personal use does not constitute an "industrial use" within the meaning of the ordinance, the defendant is not operating a junk yard in violation of the town's zoning ordinance. I believe that this analysis falls short.

As an initial matter, the court's analysis, which turns on the characterization of a junk yard as an industrial use, fails to take into account that the ordinance allows junk yards only in the General Use district, and, then, only by special exception. See Town of Lincoln, New Hampshire Land Use Plan Ordinance art. VI §§ A, B(2) (2021). Regardless of whether the defendant's use of his properties might be fairly described as an "industrial

8

use," the determinative question is whether his use falls within the plain meaning of the term "junk yard" as used in the zoning ordinance. I believe that it does.

The trial court determined that under the dictionary definition of junk yard, defined as "a yard used to keep usu[ally] resalable junk," the yard must, at least to some extent, sell junk. Because the defendant was not selling junk, the trial court concluded that his use was not encompassed by the ordinance. The town, however, asserts that "[i]nclusion of the word 'usually' demonstrates that a junk yard does not always have to keep junk that is resalable," but, rather, may be "a yard used to store sometimes resalable junk." (Quotation and bolding omitted.)

I agree with the town that the phrase "usually resalable junk" does not require a junk yard to be involved in the selling of junk. Rather, the phrase "usually resalable" simply describes the condition of the "junk" kept in a junk yard. "Usually" means "ordinarily." Webster's Third New International Dictionary 2524 (unabridged ed. 2002) (capitalization omitted). "Resalable" means "fit for sale." Id. at 1929. Under its plain meaning, a junk yard is a yard used to keep junk that is ordinarily — but not always — resold. Thus, any "yard used to keep" such junk falls within the definition of junk yard, regardless of whether the junk is actually sold. This interpretation is consistent with the definition in The Oxford English Dictionary that a junk yard is "[a]n area or enclosure where old or discarded items and materials, esp[ecially] scrap metal, are collected before being reused, recycled, or destroyed" or "[a] place which is untidy, dirty, or cluttered with objects or refuse." The Oxford English Dictionary, https://www.oed.com/view/Entry/71926303?redirectedFrom=junkyard#eid (last visited Jan. 15, 2022). Accordingly, I conclude that, applying the plain meaning of the term, the defendant's properties, which contain "large amounts of . . . old or used scrap metal including numerous machine or automotive parts, tires, wheels, cables and wiring, woodstoves, snowplows, construction debris, steel drums, [and] plastic barrels," as well as "several automobiles that [do] not appear to be in working order, . . . old snowmobiles, lawnmowers, and ATVs, an old boat, and two semi-trailers," constitute a junk yard within the meaning of the zoning ordinance.

Moreover, even if, as the court concludes, the defendant's storage of junk on his property does not come within the definition of "junk yard," the conclusion reached by the court — that the defendant is not operating a junk yard in violation of the zoning ordinance — does not, as a matter of law, follow. The town's zoning ordinance is a permissive ordinance, as it provides that "[a]ny use not listed as permitted or which is not allowable by Special Exception shall be prohibited." Town of Lincoln, New Hampshire Land Use Plan Ordinance art. VI § B(1). This language "makes it clear that the . . . ordinance is an example of the common variety of zoning ordinance that

prohibits uses for which it does not provide permission." <u>Treisman v. Kamen</u>, 126 N.H. 372, 375 (1985); <u>see</u> 15 Peter Loughlin, <u>New Hampshire Practice: Land Use Planning and Zoning</u> § 9.02, at 174 (2010) (explaining that under a "permissive" ordinance, uses of land are generally prohibited "unless they are expressly permitted as primary uses or can be found to be accessory to a permitted use"). The zoning ordinance does not expressly permit storing of junk for personal use. Accordingly, the defendant's storage of junk for personal use, not being permitted by the ordinance, is prohibited.

Given that the defendant's "non-industrial" storage of junk is not a permitted use under the zoning ordinance, and that the defendant does not have a special exception allowing a junk yard in the General Use zoning district, I conclude that the defendant's use of his properties violates the town's zoning ordinance. Accordingly, I would reverse the trial court's conclusion to the contrary and remand for the court to consider whether the town is entitled to an award of its costs and attorney's fees.