NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court-Portsmouth Family Division
Case No. 2023-0297
Citation: In the Matter of Nadeau & Nadeau, 2024 N.H. 68

IN THE MATTER OF MICHELLE NADEAU AND JUSTIN NADEAU

Submitted: June 13, 2024
Opinion Issued: December 19, 2024

Primmer Piper Eggleston & Cramer, PC, of Manchester (Doreen F. Connor on the brief), for the petitioner.

Welts, White & Fontaine, PC, of Nashua (Israel F. Piedra on the brief), for the respondent.

Welts, White & Fontaine, P.C., of Nashua (Israel F. Piedra on the brief), for James and Gail Nadeau.

COUNTWAY, J.

[¶1] The respondent, Justin Nadeau (husband), appeals the final decree entered by the Circuit Court (Pendleton, J.) in his divorce from the petitioner, Michelle Nadeau (wife).  The husband's parents, James P. Nadeau, Jr. and Gail Nadeau (husband's parents), co-appeal.  The husband argues that the trial court erred in its division of the marital estate and when it denied his request

for alimony.  In addition, both the husband and his parents argue that the trial court erred when it added the husband's parents to the action as parties for discovery purposes only.  We affirm.

I.     Facts

[¶2] The following facts were found by the trial court or are supported by the record.  The parties had a wedding ceremony in Maine on June 6, 2009, but learned after the ceremony that the license of the person performing the wedding had lapsed.  The parties had a second civil ceremony on July 18, 2009.

[¶3]  Two days before the June ceremony, the parties signed a prenuptial agreement, which neither party sought to enforce.  According to an attachment to that agreement, as of June 4, 2009, the husband owned, among other properties, property in Rye (Rye property) and Portsmouth (State Street Property).  The attachment also reflects that the husband and the wife each had a 50% interest in another Portsmouth property (Sagamore Avenue property).

[¶4] Unbeknownst to the wife — and perhaps the husband — the Rye property and State Street Property had been transferred to a trust, of which the husband's father was trustee, on June 15, 2009, prior to the parties' second civil ceremony, for little or no consideration.  In 2012, the wife became aware of the transfers when she learned that the New Hampshire Attorney General's Office was investigating whether the husband was involved in fraudulent transfers of real estate.  In 2013 or 2014, the Rye property was sold to a third party.  The State Street property was sold during the pendency of the parties' divorce to a third party.

[¶5] In 2014, the parties moved from the State Street property to a property in Hampton (Hampton property).  The parties initially rented the Hampton property, but purchased it in 2018.  The husband, who was an attorney, provided $275,000 for the down payment from a loan he received from a client, Shawn Fahey.  The wife was not involved with the Fahey loan.

[¶6] Sometime after the purchase of the Hampton property, Fahey filed suit in superior court against both the husband and the wife; the Hampton property, along with other real property, became the subject of a superior court judicial attachment.  The Fahey loan also resulted in the Attorney Discipline Office bringing a disciplinary action against the husband.

[¶7] The wife filed a petition for divorce on May 8, 2020.  During the divorce, the wife sought discovery from the husband relating to, among other things, the above-mentioned real estate assets.  Ultimately, after the husband

2

failed to comply with discovery orders, the trial court granted the wife's request to join the husband's parents in the divorce proceedings "for discovery purposes only."

[¶8] Following trial, but before the trial court had issued its final decree and narrative order, the wife filed a "motion to inform" notifying the court that the superior court case brought by Fahey had been resolved. She also filed the settlement agreement with the court, along with a motion to seal. Shortly thereafter, the trial court issued an 11-page decree, accompanied by a 53-page narrative order, which, as relevant to this appeal, distributed the marital property between the parties unequally and denied the husband's request for alimony. After the trial court ruled on several post-decision motions filed by the parties, both the husband and his parents filed appeals.

## II.    Analysis

[¶9] On appeal, the husband challenges the trial court's rulings on a number of issues. As the appealing party, the husband has the burden of demonstrating reversible error. Gallo v. Traina, 166 N.H. 737, 740 (2014). Based upon our review of the trial court's order, the relevant law, and the record submitted on appeal, we conclude that the husband has not demonstrated reversible error as to the trial court's ruling that the husband dissipated the proceeds of the sale of the parties' interest in a company that was indisputably a marital asset, and its decision not to award him alimony. See id. We also disagree with the husband that the record supports the conclusion that the trial court considered the Fahey settlement agreement when it distributed the parties' property. See id. Furthermore, while the husband argues that the trial court erred in calculating the 50% equity in the Sagamore Avenue property, we conclude that the husband failed to preserve that argument for appellate review, and we therefore decline to address it. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004) (articulating long-standing rule that parties may not have review of issues not raised in the trial court). We address the husband's remaining arguments, and his parents' argument, below.

### A.    Distribution of Property

[¶10] RSA 458:16-a authorizes the circuit court to distribute property owned by divorcing parties. See RSA 458:16-a, I (Supp. 2023). When doing so, the court employs a two-step analysis. See In the Matter of Chamberlin & Chamberlin, 155 N.H. 13, 16 (2007). First, the trial court determines, as a matter of law, which assets constitute marital property under RSA 458:16-a, I. Id. Then, the court exercises its discretion to equitably distribute those assets pursuant to RSA 458:16-a, II. Id. The trial court's determination as to whether certain assets constitute marital property presents a question of law,

3

which we review de novo, while the equitable division of property is reviewed for an unsustainable exercise of discretion.  Id.

### 1. The State Street and Rye Properties

[¶11] We consider first the husband's assertion that the trial court erred when it concluded that the State Street and Rye properties were marital property.  Marital property includes "all tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties."  RSA 458:16-a, I.  "Whether, at the time a divorce petition is filed, a given asset does or does not belong to the husband or the wife, individually or collectively, calls for a legal analysis of the characteristics of the asset in question . . . ."  Chamberlin, 155 N.H. at 16.

[¶12] In this case, the State Street and Rye properties were not properties "belonging to either or both parties" at the time the divorce petition was filed because both properties had been transferred out of the husband's name in 2009 into trusts of which the husband's father was trustee.  RSA 458:16-a, I; see also In the Matter of Muller & Muller, 164 N.H. 512, 518 (2013).  The trial court noted in its order that it was "likely" that "the husband's family" had fraudulently transferred these parcels in an effort to protect the property from the wife should the marriage end in divorce.  However, uncertain whether it had "jurisdiction to recover property fraudulently transferred out of a marital estate," the trial court sought instead to "equitably distribute the property remaining within the marital estate."  There are statements in the order suggesting that the trial court treated the properties as though they were part of the marital estate.  However, reading the order as a whole, we conclude that the trial court constructively credited the husband with the proceeds from the sales of the State Street and Rye properties as an analytical step toward arriving at an equitable distribution of the remaining marital property.  See In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) (interpretation of trial court order presents a question of law for this court).  Accordingly, we must determine whether the trial court unsustainably exercised its discretion when it did so.  See Chamberlin, 155 N.H. at 16.

[¶13] RSA 458:16-a, II provides that when distributing property between parties, a trial court is to "presume that an equal division is an equitable distribution of property" unless the court determines that equal division would not be appropriate or equitable.  RSA 458:16-a, II.  The statute identifies a number of factors for a trial court to consider when determining whether an unequal distribution is an equitable distribution, including "[t]he actions of either party during the marriage which contributed to the growth or diminution in value of property owned by either or both of the parties."  RSA 458:16-a, II(f); see also In the Matter of Kempton & Kempton, 167 N.H. 785, 801 (2015)

4

(husband awarded more retirement assets than wife because the wife's criminal conduct during the marriage had substantially diminished the marital estate). To support an unequal distribution of the marital estate pursuant to this provision, a court need not find that a spouse acted with wrongful intent, as the marriage was ending. See In the Matter of Martel & Martel, 157 N.H. 53, 58 (2008) (distinguishing "dissipation" of assets from "diminution" of assets, and declining to read an intent or timing element into RSA 458:16-a, II(f)).

[¶14] The husband identified both the State Street and the Rye properties in the prenuptial agreement as assets prior to the parties' wedding ceremony in Maine on June 6, 2009. The husband argues, however, that the properties were never marital property because they were transferred into trusts he did not control prior to the parties' marriage on July 18, 2009. The husband argues in a footnote that the June 6 marriage was not valid because it was not "legally contracted" in Maine, RSA 457:3 (2018), but he has not briefed the question of whether New Hampshire law or Maine law applies to determine the validity of the marriage. We need not decide this issue, however, because applying the law of either state, we conclude that the June 6 marriage was valid.

[¶15] New Hampshire law provides that:

No marriage solemnized before a person professing to be a justice of the peace or minister of the gospel shall be void, nor shall its validity be affected on account of want of jurisdiction or authority in such supposed justice or minister or on account of any omission or informality in the certificate of intention of marriage, if the marriage is in other respects lawful and has been consummated with the belief on the part of either of the parties thereto that they were lawfully married.

See RSA 457:36 (2018). Maine law similarly provides that a marriage "is not void, nor is its validity affected by any want of jurisdiction or authority in the justice, judge, lawyer, marriage officiant or minister or by any omission or informality in entering the intention of marriage, if the marriage is in other respects lawful and consummated with a full belief, on the part of either of the persons married, that they are lawfully married." Me. Rev. Stat. Ann., tit. 19-A, § 657 (Supp. 2024).

[¶16] The wife testified that the parties exchanged vows in a wedding ceremony before 250 guests in Maine on June 6, 2009. The husband testified that shortly thereafter they traveled abroad for their honeymoon. At some point, the parties learned that the license of the officiant performing the Maine wedding had lapsed; thus less than two months after the first ceremony, they had a second civil ceremony. Both the husband and the wife testified that they

celebrated their wedding anniversary on June 6 each year. The evidence supports the trial court's implicit finding that the June 6, 2009 marriage was "consummated with the belief on the part of [both] parties thereto that they were lawfully married." RSA 457:36; see Me. Rev. Stat. Ann., tit. 19-A, § 657. Accordingly, the trial court did not err when it implicitly found that the State Street and Rye properties became part of the marital estate when the parties married in Maine on June 6, 2009. We next address whether the transfer of those properties out of the marital estate that resulted in its substantial diminution was attributable to the husband.

[¶17] The trial court found that the properties were transferred to a trust, of which the husband's father was trustee, on June 15, 2009, for little or no consideration. The trial court implicitly found that the transfers were made without the wife's knowledge and potentially without the husband's knowledge. Whether or not the husband was aware of the transfers in 2009, both parties became aware of the transfers in 2012, when the wife was contacted by the Attorney General's Office regarding an investigation into whether the husband was involved in fraudulent transfers of real estate. The trial court noted in its order that both the wife and the attorney she consulted at the time of the investigation testified that when the husband learned of the transfers in 2012 he was surprised and upset and "planned to put things right." The husband acknowledged that he was upset by the deed transfers when they were discovered in 2012, and testified that he did not recall signing the deeds transferring the properties in 2009. However, no subsequent deeds correcting the transfers of the State Street and Rye properties were ever executed.

[¶18] The husband's action (if he transferred the properties in 2009), or inaction (if he failed to correct the transfers in or after 2012), led to a substantial diminution in the value of the marital estate. The trial court treated the State Street and Rye properties as if they were existing marital property and then constructively awarded them to the husband as part of his share of the marital estate. This treatment is consistent with how courts treat dissipated assets. See In the Matter of Brownell & Brownell, 163 N.H. 593, 600 (2012). In Brownell, we reasoned that:

> Given the purpose of RSA 458:16-a (2004), which is to achieve equity, we hold that it would be contrary to legislative intent to permit one spouse to squander marital property and render it impossible to make an equitable award of property. Consistent with the equitable purpose of distribution under statutes like RSA 458:16-a, courts have held that dissipated property must be distributed like any other, even though it no longer exists.

Id. (quotations, citation and brackets omitted).  The same reasoning applies where, as here, the actions of a spouse result in the diminution in the value of the marital estate.

[¶19] The husband asserts that the trial court treated the properties as "dissipated" assets, and that the trial court erred in treating the properties as it did because "[d]issipation only occurs where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." (Quotation omitted). We disagree with the husband's reading of the order.  The trial court stated that it had "analogize[d] to cases of dissipated assets in determining the most equitable way to divide the marital assets." (Emphasis added.).  This approach was appropriate because, as we have explained, the reasoning supporting treating dissipated assets as if they were existing marital property and then constructively awarding them to the spouse who dissipated those assets applies with equal force in diminution cases.  However, unlike dissipation cases, diminution cases do not require a trial court to consider intent or timing.  See RSA 458:16-a, II(f); see also Martel, 157 N.H. at 58 (identifying factors for trial court to consider to determine whether action by party during the marriage which contributed to diminution in the value of property justifies unequal division of property).  Rather, in diminution cases, a trial court is required to consider factors such as:

> conduct which contributed to the growth in value of property; the nature of the conduct; the other spouse's knowledge of the conduct; whether the conduct diminished the total marital assets to such an extent that the other spouse is unable to maintain a similar lifestyle following divorce; and any other factor the court deems relevant.

Martel, 157 N.H at 59.

[¶20] In this case, regarding the nature of the conduct, the trial court found that it was "likely that the [husband's] family" had fraudulently transferred the parcels in an effort to protect the property from the wife should the marriage end in divorce, and whether or not the husband was aware of the transfers in 2009, he became aware of them in 2012.  The wife was unaware in 2009 that the transfers had been made, and when she became aware of the transfers in 2012 and brought the matter to the husband's attention, the husband represented that he would "make things right."  Furthermore, the 2009 prenuptial agreement reflected that the value of the Rye property was $395,000.  The State Street property was sold for $575,000 while the divorce was pending.  The transfers of the properties therefore resulted in a substantial diminution in the value of the marital estate.  Finally, the trial court found that the husband would likely receive a benefit from the transfer of the properties to

his parents.  Under these circumstances, we cannot conclude that the trial court unsustainably exercised its discretion when it applied RSA 458:16-a, II(f) to support an unequal distribution of assets due either to the husband's action in transferring the properties in 2009 or to his failure to correct the transfers in 2012.

[¶21] Nor are we persuaded by the husband's argument that the trial court's "disposition of the State Street and [Rye] properties improperly impacted the rights of third parties" because the husband's parents "were the titular owners of the two subject properties."  Crediting the value of the State Street and Rye properties to the husband for the purposes of determining an equitable distribution of the remaining marital estate did not require the trial court to make any determination regarding the validity of the husband's parents' property rights.

2. Wife's Personal Injury Settlement

[¶22] At trial, the wife testified on cross-examination that she had recently received between $60,000 and $70,000 in a personal injury settlement for a back injury she sustained in a 2014 car accident, and that she had not disclosed the settlement award in her financial affidavit.  In his requests for findings of fact and rulings of law, the husband requested that the trial court award him one-half of the settlement proceeds.  The final decree, the narrative order and the asset/debt spreadsheet make no mention of the settlement.  The husband argues that the trial court's failure to account for and equitably divide the settlement funds was an unsustainable exercise of discretion, and that we should therefore vacate the trial court's property distribution order.

[¶23] A personal injury award acquired during marriage is marital property.  See In the Matter of Preston & Preston, 147 N.H. 48, 49-50 (2001).  However, a trial court, in its discretion, may award a particular asset in its entirety to one party.  See Holliday v. Holliday, 139 N.H. 213, 215-17 (1994) (concluding trial court's award of husband's lottery winnings to the husband was a sustainable exercise of discretion); In the Matter of Letendre & Letendre, 149 N.H. 31, 33, 36, 37 (2002) (affirming the trial court's award of the proceeds of a verdict in the wife's gender discrimination lawsuit entirely to the wife).  The wife in this case received $60,000 to $70,000, after the parties separated, for bodily injuries she sustained in a motor vehicle accident.  We conclude that the award of the proceeds entirely to the wife does not constitute an unsustainable exercise of discretion.

[¶24] Citing our decision in In the Matter of Spenard & Spenard, 167 N.H. 1 (2014), the husband argues that the trial court order should be vacated because the trial court "erred by failing to make findings regarding the settlement funds and by failing to account for and equitably divide settlement

8

funds." In Spenard, we rejected the husband's assertion that the trial court had made specific findings about certain promissory notes, noting that the husband "did not even disclose the notes as assets on his financial affidavits." Spenard, 167 N.H. at 7. We therefore vacated the property distribution and remanded the case to the trial court to make "specific findings and rulings." Id. In this case, by contrast, it is clear from the record that the trial court did not overlook the proceeds from the settlement, but, rather, simply declined the husband's request to award him half of the proceeds. The husband submitted requests for findings of fact and rulings of law in which he specifically requested that the trial court award him half of the value of the settlement. Following the issuance of the final decree and narrative order, the husband filed a motion to reconsider in which he argued, in part, that the trial court erred when it did not specifically address the award in its order. In its order denying the husband's motion to reconsider, the court stated that it had reviewed the motion to reconsider "in [its] entirety," and declined to reconsider its final decree on the petition for divorce or its narrative order. The trial court also specifically stated that, "[t]o the extent the Court did not specifically respond to one of the [husband's] requests for a finding or ruling in the Court's various Final Orders, the Court reiterates that his requests were denied."

[¶25] Because it is clear from the record that the trial court considered and denied the husband's request to award him half the proceeds of the settlement, and because there is sufficient evidence in the record to support the award of the proceeds to wife alone, we conclude that the trial court did not unsustainably exercise its discretion. See Letendre, 149 N.H. 31, 33, 36.

B.    Adding Husband's Parents as Parties for Discovery Only

[¶26] In her motion to join the husband's parents, the wife asserted that she would be unable to prepare for trial without their joinder because the husband had been deficient in his discovery responses and document production and it had "become evident that the finances and assets of the parties which are at issue in this case . . . are inextricably connected to [the husband's] parents." The trial court granted the motion, "for discovery purposes only," over the husband's objection. In denying the husband's parents' request to authorize an interlocutory appeal, the trial court stated that it had granted the motion to join for the purposes of discovery only, pursuant to Circuit Court Family Division Rule 2.7(B). We understand the husband and his parents to argue that Family Division Rule 2.7(B) does not authorize the trial court to join a person as a party to a case without also affording the joined person the full panoply of rights afforded parties, including the right to conduct discovery. We need not decide whether the trial court erred as a matter of law when it joined the husband's parents as parties "for discovery purposes only," because we agree with the wife that no showing has been made that the alleged error affected the outcome of the case.

9

[¶27] As the appealing parties, the husband and his parents have the burden of demonstrating reversible error. Gallo, 166 N.H. at 740. "Within the context of a non-criminal appeal, this generally requires the appealing party to demonstrate how the alleged error affected the outcome of the case, regardless of whether the error is grounded upon a constitutional or statutory right." In the Matter of Albrecht & Albrecht, 176 N.H. 106, 110 (2023). Based upon our review of the trial court's order, the record submitted on appeal, and the arguments made by the parties, we conclude that the husband and his parents have failed to demonstrate reversible error.

[¶28] The wife's motion to join asserted that the husband and his parents had "engaged in a lengthy history of questionable and potentially fraudulent transfers of ownership and interests in the marital assets of the parties including but not limited to real estate, trust assets, and financial accounts as well as business interests." The motion also stated that joinder was necessary "for further discovery into the convoluted financial matters of [the husband] and his parents." Because the husband had not produced in discovery information sufficient to determine the status of the assets identified in the motion, the wife argued that joinder of the parents was necessary, an argument with which the trial court agreed. It is clear from the record and the pleadings in this case that the trial court joined the parents for the limited purpose of determining the status of those assets in order to discharge its statutory responsibility to equitably distribute property between the husband and the wife. See RSA 458:16-a; see also In the Matter of Eckroate-Breagy & Breagy, 170 N.H. 247, 250 (2017) ("Under RSA 458:16-a, I, the trial court first determines, as a matter of law, what assets are marital property and thus subject to equitable distribution, and then exercises its discretion to make an equitable distribution of those assets."). As we discussed in our analysis of the trial court's treatment of the State Street and Rye properties, the trial court neither considered nor disposed of any property claims of the husband's parents. The order joining the husband's parents was designed to assist the court in equitably distributing property between husband and wife, and not to adjudicate any claims or issues of the husband's parents. The information the wife sought to obtain by moving to join them as parties could have been otherwise obtained through subpoenas.

[¶29] Both the husband and his parents argue that the trial court order joining the parents as parties "for discovery purposes only" affected the outcome of this case because the trial court drew adverse inferences against the husband due to the husband's parents' failure to respond to discovery requests. Although the trial court order references both the husband's and his parents' failure to comply with "reasonable discovery requests," we disagree with the husband and his parents that this establishes that the trial court "penalized" the husband based upon the actions of his parents. It is clear from the record that, had the husband himself complied with the discovery requests,

10

it would have been unnecessary to seek discovery from his parents, and that the trial court drew adverse inferences against the husband based upon the husband's actions. Accordingly, the husband and his parents have not demonstrated how the alleged error affected the outcome of the case. See Albrecht, 176 N.H. at 110.

[¶30] We conclude that the husband's parents' remaining arguments regarding how they were prejudiced by the trial court order joining them "for discovery purposes only" are without merit and warrant no further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

MACDONALD, C.J., and BASSETT and DONOVAN, JJ., concurred.

11